CLAY, Respondent, v. BRADLEY, Appellant.

*No. 733 (1974). Argued September 8, 1976.—Decided October 19, 1976.*
(Also reported in 246 N. W. 2d 142.)

[16] *Id.*

For the appellant there was a brief by *Gavic, Richardson & Skow* of Spring Valley, and oral argument by *Robert J. Richardson.*

For the respondent there was a brief by *Doar, Drill, Norman & Bakke* of New Richmond, and oral argument by *James A. Drill.*

DAY, J. The principal questions on this appeal are first, whether a contract for the sale of real estate was vitiated under the statute of frauds because the land description was indefinite and second, whether there was sufficient evidence to support the jury's award of damages. Other issues are discussed in this opinion.

The appeal is from a judgment supporting an award of damages by a jury in favor of the respondent-purchaser ("plaintiff") under a purchase and sale agreement for the failure of appellant-seller ("defendant") to transfer title. The action was brought for specific performance which the trial court denied; however the court found in favor of the plaintiff on the question of liability and submitted a question to the jury solely on damages.

Under date of October 27, 1972 plaintiff Mr. Ronald Clay signed an offer to purchase real property described as "John Bradley's 10 acre farm," for the price of $14,500. The offer provided that it expired on October 28, 1972 and that if the offer was not accepted, the earnest money should be returned on October 30, 1972.

The date of closing and the date the buyer was to take physical possession was December 1, 1972. Mr. Dale Viney was the real estate broker and agent of the seller, Mr. John Bradley. The broker left a copy of the signed offer with Mr. Clay and took the other copies to Mr. Bradley who signed an acceptance under date of October 31, 1972. On the copies signed by Mr. Bradley, the date the earnest money was to be returned had been changed to October 31, 1972, the date the offer expired was changed to October 31, 1972 and the year "1971" for tax proration was crossed out. The dates of closing and possession were changed to December 31, 1972.

Within days after Mr. Bradley signed, Mr. Clay asked Mr. Viney if he could make repairs on the house located on the property. Mr. Viney discussed it with Mr. Bradley and gave Mr. Clay permission. Mr. Clay then proceeded to make extensive repairs on the premises. He repaired the furnace, put in new cabinets, walls and ceilings and fixed the windows. Mr. Clay brought in a sixty-foot high well digger and had a new well dug. Mr. Clay testified he paid $8,812.11 for material and spent 600 hours of labor, which he valued at $4.00 per hour, on the property. He testified that the property had a market value of $34,000 upon completion of his repairs and remodeling. Mr. Bradley testified the property was only worth $18,000 as a result of Mr. Clay's efforts.

Because of problems with the abstract, the transaction could not be closed on December 31, 1972. Mr. Clay obtained financing and was ready to close. Mr. Bradley refused to transfer the title about January 15, 1973. Mr. Bradley testified that he also did additional work on the premises following the work done by Mr. Clay.

Sometime after Mr. Bradley listed the property with Mr. Viney he had his attorney draft a deed which was delivered to Mr. Viney. It contained a metes and bounds description of the property comprising 12.4 acres.

Trial on Mr. Clay's action for specific performance of the contract was to a jury. At the close of the evidence, both parties moved for a directed verdict. This had the effect of leaving the factual issues to be decided by the court, 270.26 Stats.[1] (1971).

Mr. Bradley argues that the changes in the dates for acceptance, return of earnest money, closing and possession on the contract form, made after Mr. Clay signed it and before Mr. Bradley signed, caused his acceptance to be a counter-offer and that such counter-offer was never accepted in writing by Mr. Clay. That issue is disposed of by the fact that the work done by Mr. Clay after such counter-offer shows an acceptance of the counter-offer.[2]

The seller further argues that the description in the contract "John Bradley's 10 acre farm" is too indefinite to satisfy the statute of frauds.[3] The purchaser in his brief concedes that the description does not satisfy the statute of frauds but he relies on extrinsic evidence admitted by the trial court over objection to provide the description of the property which the seller intended to sell and the purchaser to buy.

Ordinarily extrinsic evidence will not be admitted to provide a property description where the contract of purchase and sale is deficient under the statute of frauds.

[1] "270.26 *Motion for directed verdict waives jury trial.*

"Whenever in a jury trial all the parties, without reservation, move the court to direct a verdict, such motions, unless otherwise directed by the court before discharge of the jury, constitute a stipulation waiving a jury trial and submitting the entire case to the court for decision."

[2] *Todorovich v. Kinnickinic Mut. L.&B. Asso.* (1941), 238 Wis. 39, 42, 298 N.W. 226, 135 A.L.R. 818.

[3] "706.02 *Formal Requisites.*

"(1) Transactions under s. 706.01(1) shall not be valid unless evidenced by a conveyance which:

". . .

"(b) Identifies the land; . . ."

"The inquiry when this type of statute of frauds question is presented is into whether the document itself sufficiently describes the property and sets forth intent of the parties." *Wadsworth v. Moe* (1972), 53 Wis. 2d 620, 626, 193 N.W. 2d 645.

Part performance is a basis for removing a real estate conveyance from the statute of frauds. *Rossow Oil Co. v. Heiman* (1976) 72 Wis. 2d 696, 709, 242 N.W. 2d 176. The doctrine is codified in section 706.04 Stats.[4] and is equitable in nature.

"If a defendant, after permitting the acts of part performance, were to be allowed to interpose the statute of frauds as a bar to the plaintiff's remedial right, a virtual fraud upon the plaintiff would thereby be perpetrated." *Kelly v. Sullivan* (1947), 252 Wis. 52, 59, 30 N.W. 2d 209.

In *Kelly,* the purchaser took possession of the premises with the consent of the vendor to make improvements.

---

[4] "706.04 *Equitable Relief.*

"A transaction which does not satisfy one or more the requirements of s. 706.02 may be enforceable in whole or in part under doctrines of equity, provided all of the elements of the transaction are clearly and satisfactorily proved and, in addition:

"(1) The deficiency of the conveyance may be supplied by reformation in equity; or

"(2) The party against whom enforcement is sought would be unjustly enriched if enforcement of the transaction were denied; or

"(3) The party against whom enforcement is sought is equitably estopped from asserting the deficiency. A party may be estopped whenever pursuant to the transaction and in good faith reliance thereon, the party claiming estoppel has changed his position to his substantial detriment under circumstances such that the detriment so incurred may not be effectively recovered otherwise than by enforcement of the transaction, and either:

"(a) The grantee has been admitted into substantial possession or use of the premises or has been permitted to retain such possession or use after termination of a prior right thereto; or

"(b) The detriment so incurred was incurred with the prior knowing consent or approval of the party sought to be estopped."

The court in *Kelly* held that the agreement between the parties failed to describe the property as required by the statute of frauds but the purchaser and his wife had visited the premises during construction of a house and paid some of the expenses as they arose. The vendor backed out of the agreement. This court said:

"(I)f a plaintiff buyer, acting under an oral contract and with the consent of the seller, either makes valuable improvements on the land or takes possession of the land, he is entitled to specific performance of the contract." 252 Wis. at 59.

In *Kelly,* as here, the trial court awarded damages in lieu of specific performance.

None of the writings introduced at the trial came within the exceptions provided by 706.02(2) Stats.[5]

We hold that where a contract for the sale of land with an indefinite description is taken out of the statute of frauds by part performance as here extrinsic evidence admissible but for the statute of frauds may be introduced to provide the description of the property the parties intended to convey.

The evidence which the court received in addition to the contract was an undated, unsigned deed Mr. Viney received from Mr. Bradley's attorney shortly after the property was listed with him. It contained a metes and bounds description of 12.4 acres. It was the same descrip-

[5] 706.02(2):

"(2) A conveyance may satisfy any of the foregoing requirements of this section:

"(a) By specific reference, in a writing signed as required, to extrinsic writings in existence when the conveyance is executed; or

"(b) By physical annexation of several writings to one another, with the mutual consent of the parties; or

"(c) By several writings which show expressly on their faces that they refer to the same transaction, and which the parties have mutually acknowledged by conduct or agreement as evidences of the transaction."

tion used when the property had previously been sold on land contract by Mr. Bradley to people named Olson. Subsequently, Mr. Bradley reacquired the property. Mr. Viney, the broker and agent of Mr. Bradley, testified he believed that this was the same property which Mr. Bradley directed him to sell again. Mr. Bradley in a pretrial deposition admitted at trial stated he intended to sell Mr. Clay the same property previously sold to the Olsons. At the trial he testified he intended to sell Mr. Clay less acreage than he had sold to the Olsons.

The court found that Mr. Bradley intended to sell the same 12.4 acres he had previously sold to the Olsons. The court also found that Mr. Bradley knew that Mr. Clay was making improvements on the property. The court further found that Mr. Clay had in effect ratified the changes made in the contract after he had signed the original form of the offer. These findings are not against the great weight and clear preponderance of the evidence and must be sustained by this court.

The court submitted the following question to the jury:

"What sum of money will fairly and reasonably compensate Ronald Clay, as of January 10, 1973, for the failure of John Bradley to deliver title in accordance with the offer of purchase accepted by John Bradley on October 31, 1972."

The jury returned a verdict of $19,500. This is the exact difference between the purchase price of $14,500 and the $34,000 which Mr. Clay testified was the value of the property following his improvements.

The defendant here argues that it was error to submit a question to the jury on contract damages or loss of bargain and that under 706.04(2) only damages for unjust enrichment should be allowed. We disagree. The purchaser under the facts here is entitled to the dif-

ference between the market value of the land at the time of the breach and the contract price. This was the formula followed in *Kelly, supra.* Sec. 706.04 Stats. states that the contract may be enforceable in "whole or in part." The court instructed the jury that Mr. Clay should be compensated for all labor and materials expended and "any other loss he may have sustained as of January 10, 1973."

Mr. Clay testified he had purchased, renovated and sold other properties before and after this transaction. The seller Mr. Bradley gave his opinion as to the value of the premises after the Clay improvements. As the owner he was qualified to express his opinion of its value. The weight to be given his testimony was for the jury.[6] We hold that Mr. Clay as the purchaser under the contract was likewise qualified to give his opinion as to value. The weight to be given his testimony was for the jury. The figure of $34,000 represented a claimed appreciation in value of approximately $8,300 above the original contract price plus the cost of labor and materials. This difference is not so unreasonable as to require reversal. It was approved by the trial court. We affirm the damage award.

The defendant argues that the financing provision of the contract is too indefinite. This issue is raised for the first time on this appeal. The practice in this court is not to consider an issue raised for the first time on appeal. *Terpstra v. Soiltest, Inc.* (1974) 63 Wis. 2d 585, 593, 218 N.W. 2d 129.

*By the Court:* Judgment affirmed.

[6] 5 *Nichols on Eminent Domain* (Rev. 3rd Ed., 1969), sec. 18.4(2).