STATE of Wisconsin, Plaintiff-Respondent,

v.

OUTAGAMIE COUNTY BOARD OF ADJUSTMENT, Defendant,

David and Barbara WARNING, Intervening Defendants-Respondents-Petitioners.

Supreme Court

*No. 98–1046. Oral argument October 4, 1999.—Decided June 29, 2001.*

2001 WI 78

(Also reported in 628 N.W.2d 376.)

618

619

For the intervening defendants-respondents-petitioners there were briefs by *Richard J. Carlson* and *Silton, Seifert, Carlson & Gamble, S.C.*, Appleton, and oral argument by *Richard J. Carlson*.

For the plaintiff-appellant the cause was argued by *Jeffrey M. Gabrysiak*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

An amicus curiae brief was filed by *John A. Kassner* and *Brennan, Steil, Basting & MacDougall, S.C.*, Madison, on behalf of the Wisconsin Builders Association, and oral argument by *John A. Kassner*.

¶ 1.   DIANE S. SYKES, J.   This is a zoning case in which we review a conclusion reluctantly reached by the court of appeals that the law of this state may require a basement to be destroyed in order to save it from being flooded. Judge Michael Hoover aptly noted the irony in his opinion for the court of appeals: "applicable law compels a harsh result" in that "we order the certain destruction of [a] basement in order to avoid the possibility that it may be damaged in a flood." *State v. Outagamie County Bd. of Adjustment*, No. 98–1046, unpublished slip op. at 2 (Wis. Ct. App. Sept. 22, 1998).

¶ 2.   David and Barbara Warning own a ranch home in the Town of Bovina, located in the 100-year Flood Fringe District of Outagamie County. The Warnings' basement floor falls below the flood protection elevation required by the county's floodplain zoning ordinance. The Warnings wanted to add a sun porch

620

onto their home, but were denied a building permit because of the basement floor violation. They sought and obtained a variance to allow the nonconforming basement to continue to exist.

¶ 3. The State, for the Department of Natural Resources (DNR), initiated certiorari review in the circuit court, contending that the basement was illegal and the variance improperly granted. The circuit court affirmed the issuance of the variance. The court of appeals reversed, noting, however, the anomaly of using a zoning law the purpose of which is to *protect* basements to precipitate the likely regulatory *destruction* of one.

¶ 4. What compelled this anomalous result, according to the court of appeals, was our decision in *State v. Kenosha County Board of Adjustment*, 218 Wis. 2d 396, 415, 577 N.W.2d 813 (1998), as well as Wis. Admin. Code § NR 116.13(2) (Register, June 1996, No. 486). *Kenosha County* eliminated the previous distinction between area and use variances and established a "no reasonable use of the property" standard for the issuance of *either* type of variance, thereby making *all* variances almost impossible to obtain. The administrative rule prohibits outright the issuance of a variance to allow a basement floor that falls below the regional flood elevation to continue to exist.

¶ 5. *Kenosha County's* establishment of a single standard for measuring the "unnecessary hardship" required for the issuance of both use *and* area variances has practically eliminated the efficacy of variance procedure as a remedy against individual injustices caused by sweeping land use regulations, as the Warnings' case vividly demonstrates. Such a radical change in variance law was unwarranted. I would overrule the case and restore the distinction between

use and area variances to the law of zoning in this state. Two members of the court join me in this conclusion.[1] Two other members of the court read *Kenosha County* differently, but nevertheless conclude that it is not an impediment to the Warning's variance, and therefore concur.[2] Four members of the court[3] join me in concluding that because Wis. Admin. Code § NR 116.13(2) categorically prohibits variances for *any* deviation from basement elevation requirements in floodplains, it inexorably conflicts with the discretionary authority over variances vested in local boards of adjustment by state statute, and therefore must give way. Accordingly, we reverse the court of appeals, and reinstate the circuit court's decision affirming the Outagamie County Board of Adjustment's issuance of a variance to the Warnings.

¶ 6.  Before proceeding, a word about the stakes, which the dissent suggests I have mischaracterized. As a practical matter, this case is about a too-deep basement, which may or may not eventually be subject to an enforcement action but presently is preventing a homeowner from building a sun porch. If that were all there was to it, we never would have granted review. As a legal matter, however, the stakes are very high. This case is about an erroneous precedent of this court that severely restricts almost to the point of eliminating the availability of zoning variances in this state, and a DNR rule that conflicts with a statute. The dissent is

---

[1] Justices William A. Bablitch and David T. Prosser, Jr. join this opinion in its entirety.

[2] *See* concurring opinion of Justice N. Patrick Crooks, joined by Justice Jon P. Wilcox.

[3] Justices Wilcox and Crooks join Sections IV and V of this opinion.

therefore correct that the authority of the DNR and the principles of stare decisis are on the line.

¶ 7.   But more fundamentally, this case is about individual private property rights, the scope of the police power to regulate them through zoning, and the statutory authority of local boards to strike a balance between the two through variances. My focus is not on saving the basement or allowing the sun porch, but on restoring balance and common sense to the law of zoning in this state. The irony inherent in the notion of destroying a basement in order to save it only serves to illustrate the flaws in the erroneous precedent and the conflicting rule; it does not provide the ultimate justification for this opinion.

I

¶ 8.   The relevant facts are undisputed. David and Barbara Warning own 1.77 acres of land in the Town of Bovina in Outagamie County. The Warnings' property is located within the 100-year Flood Fringe District of Outagamie County and is regulated by the Outagamie County Zoning Ordinance and the Outagamie Shoreland-Floodplain-Wetland Ordinance (collectively, "the Ordinance").

¶ 9.   The Ordinance defines "flood fringe" as "[t]hat portion of the floodplain outside of the floodway, which is covered by floodwaters during the regional flood. It is generally associated with standing water rather than rapidly flowing water." Ordinance § 16.05. The Ordinance defines "regional flood" as a flood which, because of the area's physical characteristics, may be expected to occur "once in every 100 years." *Id.* The chance of a regional flood occurring in any given year, therefore, is one percent. *Id.* The Ordinance requires that the first floor of a residential building

located in the flood fringe, including a basement floor, be two feet above regional flood elevation. Ordinance § 16.32(4)(b)1.

¶ 10. In 1980, the Warnings applied for and received a conditional use permit from the Outagamie County Zoning Committee to place fill and a mobile home on their property, which they knew was in the Flood Fringe District. The County required the placement of fill on the land so that the mobile home would be at the proper elevation. The mobile home complied with flood proofing requirements.

¶ 11. In 1984, the Warnings applied for and received a second building permit to replace the mobile home with a permanent single-family home. The building inspector issued a building permit to the Warnings but did not advise them that they needed to obtain a zoning permit from the Outagamie County Zoning Department, and they did not do so.

¶ 12. With the building permit in hand, the Warnings constructed a three-bedroom ranch house with a basement and attached garage. The basement floor of the house fell 3.7 feet below the 100-year regional flood elevation and 5.7 feet below the flood protection elevation, in violation of the Ordinance and the Wisconsin Administrative Code.[4]

¶ 13. In 1995, 11 years after their home was built, the Warnings applied for a third building permit, this time to add a sun porch to their home. The Outagamie County zoning administrator denied the Warnings' request because their home did not meet the flood protection elevation requirements due to the

---

[4] The 100-year regional flood elevation is the level to which flood waters will rise during a 100-year flood. The flood protection elevation is an elevation two feet above the 100-year flood elevation. Wis. Admin. Code § NR 116.03(20)(41)(June 1996).

basement floor violation. The zoning administrator informed the Warnings that without a variance, they could not obtain a building permit to add the sun porch to their nonconforming structure.

¶ 14.   The Warnings applied to the Outagamie County Board of Adjustment for an "after the fact" variance for their nonconforming basement floor.[5] A hearing was held, and the DNR appeared and opposed the variance, arguing that the Warnings' home was not merely nonconforming but "an illegal structure" and that the variance criteria could not be met.

¶ 15.   The Warnings noted, and the zoning administrator conceded, that there were other homes in the area with basements below regional flood elevation, but they had apparently been built before the Ordinance was in place. The Warnings also noted that there was no history of flooding in the area, and that filling in the basement or trying to sell the home without a variance would cause a substantial loss. They also pointed out that the sun porch itself would comply with the Ordinance as it would be constructed on fill above flood protection elevation.

¶ 16.   There was no community opposition to the variance; only the zoning administrator and the DNR representative objected. They argued that the Warn-

---

[5] Section 16.32(4)(b)2 of the Outagamie County Shoreland-Floodplain-Wetland Zoning Ordinance states:

> The basement floor may be placed at the regional flood elevation, providing it is floodproofed to the flood protection elevation. Where FEMA has granted a community-wide exception, the basement floor may be placed at an elevation lower than the regional flood elevation providing it is in compliance with § 16.37. If FEMA has not granted an exception, *requests to construct a basement floor below regional flood elevation must be considered a variance requiring action of the Board of Adjustment as outlined in § 16.40* (emphasis supplied).

ings had not satisfied the criteria for a variance under the Ordinance. Neither the zoning administrator nor the DNR representative cited § NR 116.13(2) as prohibiting the Board from granting any variance at all in these circumstances.

¶ 17. The Board of Adjustment made findings and voted unanimously to grant the variance, reasoning that:

> [T]he hardship experienced by the Warnings was caused by the Town of Bovina and the negligence of the town building inspector for issuing a building permit for the three bedroom ranch style home in 1984. The hardship is not based solely on economic gain or loss, the loss would be substantial. The Board also felt that the proposed addition to the home would comply with the floodproofing requirements.

¶ 18. The State sought certiorari review of the Board of Adjustment's decision in circuit court pursuant to Wis. Stat. § 59.694(10) (1997–98).[6] On certiorari review, the DNR argued for the first time that § NR 116.13(2) prohibited any variances for flood elevation deviations. The circuit court affirmed the Board, concluding that the Warnings had at all times acted in good faith, that they would suffer a hardship that was not self-created in the absence of a variance, and that the DNR had waived its argument that § NR 116.13(2) was more restrictive than the Ordinance. Specifically as to hardship, the circuit court applied the court of appeals' decision in *State v. Kenosha County Board of Adjustment*, 212 Wis. 2d 310, 569 N.W.2d 54 (Ct. App. 1997), and held that the hardship of filling in the base-

---

[6] All subsequent references to the Wisconsin Statutes are to the 1997–98 version unless otherwise indicated.

ment or moving the residence "would be extremely great" and "unnecessarily burdensome" as compared to the benefits of enforcing the "strict letter of the restrictions."

¶ 19.   The State appealed, and shortly thereafter, this court reversed the court of appeals' decision in *Kenosha County*. Our decision in *Kenosha County* erased the longstanding distinction between area (or dimensional) and use variances, and instituted a requirement that a property owner seeking *either* type of variance establish that there is "no reasonable *use* of the property without a variance". *Kenosha County*, 218 Wis. 2d at 413–14 (emphasis added). The Warnings, of course, had sought and obtained an area variance for their basement. Before our decision in *Kenosha County*, area variances had been governed by the "unnecessarily burdensome" standard described in *Snyder v. Waukesha County Zoning Board of Adjustment*, 74 Wis. 2d 468, 475, 247 N.W.2d 98 (1976), which the court of appeals had followed in its decision in *Kenosha County*, 212 Wis. 2d at 320.

¶ 20.   Evaluating an area variance against a "no reasonable use of the property" standard is a far cry from evaluating it against an "unnecessarily burdensome" standard. Yet our decision in *Kenosha County* did not overrule or even distinguish *Snyder*, but simply declared itself "compatible" with its "concerns," without explaining how this could be so, when the earlier case had clearly distinguished between use and area variances and established the more flexible "unnecessarily burdensome" standard for the latter. The court of appeals reluctantly concluded that *Kenosha County*'s new "no reasonable use of the property" test for area variances could not be met in this case. The court also concluded that, in any event, § NR 116.13(2) foreclosed

the issuance of a variance to allow a basement floor below the regional flood elevation. *State v. Outagamie County Bd. of Adjustment*, No. 98–1046, unpublished slip op. at 8–9.

¶ 21.  We accepted review and heard oral argument on October 6, 1999. We subsequently ordered rebriefing and reargument, which took place on October 4, 2000.

## II

■

¶ 22.  The interpretation and reconciliation of statutes and ordinances involve questions of law that reviewing courts decide independently. *See State v. Ozaukee County Bd. of Adjustment*, 152 Wis. 2d 552, 559, 449 N.W.2d 47 (Ct. App. 1989). The Wisconsin Statutes require counties to zone by ordinance all floodplains within their unincorporated areas. Wis. Stat. § 87.30(1). The purpose of floodplain zoning is to promote the public health, safety, and welfare and to minimize flood damage. *See* Wis. Stat. § 87.30(1); *see also* § 1, ch. 614, Laws of 1965–66 Vol. II. Outagamie County adopted a combination shoreland-floodplain-wetland zoning ordinance in 1977.

¶ 23.  The statutes also authorize counties to create boards of adjustment to make special exceptions, or variances, from the terms of zoning ordinances in harmony with their general purpose and intent. Wis. Stat. § 59.694(1).[7] A board of adjustment's authority to issue variances is codified in Wis. Stat. § 59.694(7)(c), which describes the broad scope of the power in this way:

---

[7] Wisconsin Statute § 59.694 is the former Wis. Stat. § 59.99 (1993–94), renumbered by 1995 Wis. Act 201 (effective September 1, 1996).

To authorize upon appeal in specific cases variances from the terms of the ordinance that will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done.

■

¶ 24. The statute requires a person seeking a variance to prove that he or she will suffer an "unnecessary hardship" in the absence of a variance. *Arndorfer v. Sauk County Bd. of Adjustment*, 162 Wis. 2d 246, 253, 469 N.W.2d 831 (1991). The hardship must be unique to the property and not a condition personal to the landowner, such as mere inconvenience. *Snyder*, 74 Wis. 2d at 479. It cannot be self-created. *Id.* at 476. The hardship is evaluated against the purpose of the zoning restriction at issue. *Id.* at 473. A variance cannot be contrary to the public interest. *Arndorfer*, 162 Wis. 2d at 256.

■

¶ 25. A person aggrieved by the issuance or denial of a variance may commence an action in circuit court seeking the remedy available by certiorari, as the State did in this case. *See* Wis. Stat. § 59.694(10). A reviewing court must accord a presumption of correctness and validity to a board of adjustment's decision. *Snyder*, 74 Wis. 2d at 476 (citing Richard W. Cutler, *Zoning Law and Practice in Wisconsin* § 15 (1967); 4 Edward H. Ziegler, Jr., *Rathkopf's The Law of Zoning and Planning* § 42.07 (4th ed. 1995); 8A McQuillin, *Municipal Corporations* § 25.237 (3d ed. 1994)). A reviewing court may not substitute its discretion for that of the board, the entity to which the legislature

has committed these decisions. *Id.* at 476; *see also Arndorfer*, 162 Wis. 2d at 253.

¶ 26.    When no additional evidence is taken, statutory certiorari review is limited to: (1) whether the Board kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the Board might reasonably make the order or determination in question, based on the evidence. *Arndorfer*, 162 Wis. 2d at 253. In applying this standard, a reviewing court is required to defer to the decision of the board unless it is "unreasonable or without a rational basis. . . .Thus, the findings of the board may not be disturbed if any reasonable view of the evidence sustains them." *Snyder*, 74 Wis. 2d at 476.

### III

¶ 27.    The critical threshold issue in this case is the proper standard for measuring unnecessary hardship in an area variance case. The Warnings and amicus curiae argue that our decision in *Kenosha County* improperly altered the test for an area variance from the "unnecessarily burdensome" formulation that had existed since our 1976 decision in *Snyder* to the "no reasonable use of the property" standard that up to that point had generally been used only in use variance cases.

¶ 28.    The import of *Kenosha County* is that there is now in this state only one test for *both* area *and* use variances, and it is such a Draconian one that *all* variances—whether from area (dimensional) *or* use zoning restrictions—are nearly impossible to obtain. This, the Warnings and amicus contend, is completely at odds

with *Snyder*, in which we clearly established separate standards for area and use variances and said, for reasons related to the differing purposes of area and use zoning, that area variances are generally more readily obtainable than use variances. *Snyder*, 74 Wis. 2d at 473. They urge that we overrule *Kenosha County* and restore *Snyder's* distinction between area and use variances.

¶ 29.    *Kenosha County* was decided unanimously a mere three years ago. Ordinarily, of course, we adhere to the principle of stare decisis. Respect for precedent "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Payne v. Tennessee*, 501 U.S. 808, 827 (1991). Fidelity to precedent ensures that existing law will not be abandoned lightly. *State v. Stevens*, 181 Wis. 2d 410, 441, 511 N.W.2d 591 (1994) (Abrahamson, J., concurring), *cert. denied*, 515 U.S. 1102 (1995). When existing law "is open to revision in every case, 'deciding cases becomes a mere exercise of judicial will, with arbitrary and unpredictable results.' " *Citizens Utility Bd. v. Klauser*, 194 Wis. 2d 484, 513, 534 N.W.2d 608 (1995) (Abrahamson, J., dissenting) (citation omitted). Thus, we do not overturn precedent unless there is strong justification. *City of Akron v. Akron Ctr. for Reprod. Health, Inc.*, 462 U.S. 416, 420 (1983). Changing the law is justified only when "precedent has become detrimental to coherence and consistency in the law." *Stevens*, 181 Wis. 2d at 442 (Abrahamson, J., concurring).

¶ 30. Still, the principle of stare decisis is not an "inexorable command,"[8] and so the United States Supreme Court has attempted to develop an analytical framework for dealing with challenged precedents, identifying several factors to assist in the decision of whether to overrule:

> [W]hen this Court reexamines a prior holding, its judgment is customarily informed by a series of prudential and pragmatic considerations designed to test the consistency of overruling a prior decision with the ideal of the rule of law, and to gauge the respective costs of reaffirming and overruling a prior case. Thus, for example, we may ask whether the rule has proven to be intolerable simply in defying practical workability; whether the rule is subject to a kind of reliance that would lend a special hardship to the consequences of overruling and add inequity to the cost of repudiation; whether related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine; or whether facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification.

*Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 854–55 (1992) (joint opinion of O'Connor, Kennedy, and Souter, JJ.).[9] The four justices who concurred in part and dissented in part in *Planned Parenthood v. Casey* engaged in a different sort of

---

[8] *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 405 (1932)(Brandeis, J., dissenting).

[9] Citing, respectively, *Swift & Co. v. Wickham*, 382 U.S. 111 (1965); *United States v. Title Ins. & Trust Co.*, 265 U.S. 472 (1924); *see Patterson v. McLean Credit Union*, 491 U.S. 164 (1989); *see Burnet*, 285 U.S. 393.

inquiry on the decision to overrule: 1) was the prior case correctly decided; and 2) has it produced a settled body of law? *Id.* at 999 (Scalia, J., concurring in part and dissenting in part).

¶ 31. *Kenosha County* cannot withstand either analysis. The rule it established defies practical workability, lacks sufficient justification, and is detrimental to the coherence of the law of zoning in this state. The case, regrettably, was incorrectly decided. The principle of stare decisis does not compel us to adhere to erroneous precedents or refuse to correct our own mistakes. The United States Supreme Court "has never felt constrained to follow precedent" that is "unworkable or. . .badly reasoned," because stare decisis "is a principle of policy and not a mechanical formula of adherence to the latest decision." *Payne*, 501 U.S. at 827–28. Given how long *Kenosha County* has been on the books, it has not yet produced a settled body of law such that overruling it would be substantially disruptive to the legal order.

¶ 32. *Kenosha County* mistakenly merged the previously distinct standards for measuring "unnecessary hardship" in area and use variances, overruling *Snyder sub silentio* and making it virtually impossible to get a zoning variance of any kind. This has robbed boards of adjustment of the discretion explicitly vested in them by the legislature as a hedge against the individual injustices that occasionally result from the application of otherwise inflexible zoning regulations. *Kenosha County* purported to be faithful to *Snyder* and to the rule of deference to the discretion of boards of adjustment, when indeed it was not.[10] This point was

---

[10] Both the concurrence and the dissent insist that stare decisis requires us to stick with *State v. Kenosha County Board*

not lost on Judge Neal Nettesheim, as he remarked on the impact of *Kenosha County* in *State ex rel. Spinner v. Kenosha County Board of Adjustment*, 223 Wis. 2d 99, 588 N.W.2d 662 (Ct. App. 1998):

> [T]he supreme court's decision [in *Kenosha County*] demonstrates that if any feasible use of the property is available, a hardship cannot exist. Although the supreme court acknowledged, in the same breath, that a board of adjustment's decision is presumptively correct, is committed to the board's discretion and is conclusive if any reasonable view of the evidence sustains the board's finding. . .these deferential phrases ring hollow in light of the court's ultimate holding. The real effect of the court's decision is to significantly curtail a board of adjustment's discretion in such matters. It will be a rare case in which a landowner will be able to meet the "no feasible use" test.

*Id.* at 110 (Nettesheim, J., concurring.)

¶ 33.   I do not perceive that *Kenosha County* has engendered the sort of reliance that would make it inequitable, harmful, or disruptive to the people of this state to repudiate it at this early point in its doctrinal life. Accordingly, I would expressly overrule it and reinstate *Snyder* as the proper formulation of the meaning of "unnecessary hardship" for purposes of the issuance of use and area variances.

¶ 34.   Wisconsin Statute § 59.694(7)(c) authorizes boards of adjustment to grant variances in cases in

*of Adjustment*, 218 Wis. 2d 396, 577 N.W.2d 813 (1998). The court's fidelity to precedent, however, only goes so far. Nobody minded that *Kenosha County* effectively overruled *Snyder v. Waukesha County Zoning Board of Adjustment*, 74 Wis. 2d 468, 247 N.W.2d 98 (1976).

which a strict enforcement of the zoning code would cause an "unnecessary hardship." Although the statute speaks of variances generally, and does not further define "unnecessary hardship," our law has always treated use variances differently from area variances because of the different purposes underlying use and area zoning. *Snyder*, 74 Wis. 2d at 473–75. This distinction between use and area variances is well-recognized:

> A use variance is one that permits a use other than that prescribed by the zoning ordinance in a particular district. An area variance has no relationship to a change of use. It is primarily a grant to erect, alter, or use a structure for a permitted use in a manner other than that prescribed by the restrictions of a zoning ordinance.

3 E.C. Yokley, *Zoning Law and Practice* § 21–6 (4th ed. 1979); *see also* 3 Edward H. Ziegler, Jr., *Rathkopf's The Law of Zoning and Planning* § 38.01 (4th ed. 1997).

¶ 35.  As the court of appeals in *Kenosha County* noted, statutes governing use and area variances fall into three categories: (1) those which allow use and nonuse (area) variances and which allow nonuse (area) variances to be granted upon a showing of practical difficulty; (2) those which allow use and nonuse (area) variances and require a showing of unnecessary hardship for both; and (3) those which do not allow use variances and require unnecessary hardship for the granting of nonuse (area) variances. *See Kenosha County*, 212 Wis. 2d at 316–17, (quoting 3 Ziegler, *supra* § 38.04, at 42). Our statute falls into the second category, allowing both use and area variances upon a showing of "unnecessary hardship."

¶ 36.  The general rule throughout the United States recognizes a distinction in the level of hardship

required to justify area and use variances. "[I]n most states, the courts will approve an area variance upon a lesser showing by the applicant than is required to sustain a use variance." 3 Kenneth H. Young, *Anderson's American Law of Zoning* § 20.48, at 580 (4th ed. 1996). Wisconsin has followed the general rule, and in *Snyder*, we discussed the reason for the distinction:

> [T]he fact that area variances are considerably easier to obtain than use variances creates the impression that a minimal showing of difficulty will establish the element of practical difficulty and entitle the landowner to a variance. However, area variances are not more easily obtained because practical difficulties are something much less severe than unnecessary hardship, but because area variances do not involve great changes in the character of neighborhoods as do use variances. This relates to what hardships or practical difficulties may be considered unnecessary or unreasonable in light of the purpose of the zoning law.

*Snyder*, 74 Wis. 2d at 473.[11]

¶ 37. *Snyder* was an area variance case, and we established the following test for the existence of an "unnecessary hardship" sufficient for the issuance of an area variance: " '[w]hether compliance with the strict letter of the restrictions governing area, set

---

[11] Contrary to the assertion in the dissent, I do not recommend that *Kenosha County* be overruled because it "prevents Wisconsin from joining other jurisdictions that distinguish area and use variances." Dissent at ¶ 133. Wisconsin followed the majority rule in distinguishing between area and use variances until *Kenosha County* took us outside the norm. I advocate overruling *Kenosha County* in order to *return* Wisconsin to the majority, not to join it for the first time.

backs, frontage, height, bulk or density would unreasonably prevent the owner from using the property for a permitted purpose or would render conformity with such restrictions unnecessarily burdensome.' " *Snyder*, 74 Wis. 2d at 475 (quoting 2 Ziegler, *supra* § 45–28). We noted that use variances are subject to a different, narrower measure of "unnecessary hardship:"

> In *State ex rel. Markdale Corp. v. Board of Appeals*, 27 Wis. 2d 154, 133 N.W.2d 795 (1965), [a use variance case] the court considered, in relation to an appeal for a use variance, the definition of unnecessary hardship. The court first took note of the New York rule that to justify a finding of unnecessary hardship, it must appear that the property cannot yield a reasonable return when used for the permitted purposes. . . .The court then stated: "A note entitled 'Zoning Variances,' 74 Harvard Law Review (1961), 1396, 1401, suggests the following definition of 'unnecessary hardship' as used in zoning statutes and ordinances with respect to the power of appeals boards to grant variances: "Since the main purpose of allowing variances is to prevent land from being rendered useless, 'unnecessary hardship' can best be defined as a situation where in the absence of a variance no feasible use can be made of the land."

*Snyder*, 74 Wis. 2d at 474 (citations omitted).

¶ 38.  Thus, because variances from use restrictions have the potential to bring about great changes in neighborhood character, "unnecessary hardship" in use variance cases is measured against a higher standard relating to the use of the property, that is, whether a reasonable use of the property is feasible without a

variance.[12] On the other hand, because area variances do not generally change neighborhood character, "unnecessary hardship" in area variance cases is measured against a lower standard relating to the nature of the area restriction in question, that is, whether compliance with the particular area restriction would "unreasonably prevent the owner from using the property for a permitted purpose" or be "unnecessarily burdensome".[13]

---

[12] The cases seem to use the phrases "no reasonable use" and "no feasible use" interchangeably. The concept is perhaps better expressed as I have stated it above: whether a reasonable use of the property is feasible without the variance.

[13] The dissent says that this distinction in the standards for use and area variances deviates from the plain language of the variance statute. Dissent at ¶¶ 134–36. The truth is that *any* judicially created standard for evaluating "unnecessary hardship" will deviate from the plain language of the statute, because the statute does not define the term. *Snyder*'s separate standards for use and area variances are judicial gloss. *Kenosha County*'s single, "no reasonable use" standard is judicial gloss. I am not a proponent of judicially enhancing statutes beyond their text. However, in this area at least, and in most states, judicial standards have been attached to variance enabling statutes in order to give content and meaning to the broad term "unnecessary hardship," to avoid invalidating the statutes as improper delegations of discretionary power without adequately defined standards. *See* 3 Kenneth H. Young, *Anderson's American Law of Zoning* §§ 20.08, 20.16, at 452–53 (4th ed. 1996); 3 E.C. Yokley, *Zoning Law and Practice* § 21–3 (4th ed. 1979). Judicially created standards for measuring "unnecessary hardship" in variance cases have been around since the inception of zoning. It is a little late in the interpretive history of this statute to suddenly become fastidious about its plain language, unless one advocates no standard at all. I do not read the dissent as doing *that*.

¶ 39.     This distinction between area and use variances remained intact until *Kenosha County*. There, the homeowner sought an area variance to build a deck within the 75-foot setback from the ordinary high water mark of Hooker Lake. The Kenosha County Board of Adjustment granted the variance and both the trial court and the court of appeals affirmed. This court reversed, citing the "unnecessarily burdensome" language from *Snyder* but not applying it, instead adopting the State's suggestion that the case be evaluated on the basis of the "no reasonable use of the property" standard which had previously been applied only to use variance cases. *Kenosha County*, 218 Wis. 2d at 413. The court said the "no reasonable use of the property" test was "compatible with the concerns we expressed in *Snyder*," as well as the court of appeals decision in *State v. Winnebago County*, 196 Wis. 2d 836, 540 N.W.2d 6 (Ct. App. 1995). *Kenosha County*, 218 Wis. 2d at 413.

¶ 40.     In *Winnebago County*, the court of appeals had evaluated an area variance against the use variance test set out in *Snyder*. *Winnebago County*, 196 Wis. 2d at 843–45. It did so, however, because the relief sought by the property owner, while implicating an area regulation (shoreland setback requirements), would have had the practical effect of changing the character of the neighborhood by permitting greater population density (a larger number of smaller lots). The court of appeals in *Kenosha County* properly saw *Winnebago County* as a case of a use variance masquerading as an area variance, and therefore distinguished it:

> [A]lthough the relief which the landowner sought was necessarily area based, the core question before

639

the board was the scope and degree of the future *use* of the property. The landowner's development plans for the property represented a significant change in the use of the property. Under those circumstances, the area variance request carried a significant impact on the future use of the property. Rathkopf's treatise recognizes that in some instances an area variance is really a use variance in disguise:

'If the variance will permit a use of the land that changes the character of the neighborhood, then it is more likely that the variance will be held to be a use variance. For example, suppose a zoning ordinance requires 800 square feet of lot area per apartment in a multi-family zone, but the board of adjustment approves a variance for construction of an apartment building that would result in there being only 400 square feet of lot area per apartment. On its face it looks like an area variance, because the subject was area. On the other hand, doubling the number of apartment units being built on one lot *may have a substantial impact on the character of the neighborhood,* perhaps taking it from being "moderate" to "dense." Courts have found that such a variance was a use variance. 3 Rathkopf [The Law of Zoning and Planning] n. 4, § 38.01, at 8 (footnote omitted)(emphasis added).

Although the variance sought in *Winnebago County* was an area variance, the ultimate effect of the variance, if granted, would have produced a marked change in the scope and degree of the proposed development. Thus, it is not remarkable that the *Winnebago County* court saw the issue in terms of use, spoke to the issue in those terms, and relied on the "no feasible use" test set out by the supreme court in *Snyder.*

*Kenosha County,* 212 Wis. 2d at 319–20.

¶ 41. Viewing the area variance in *Winnebago County* as a use variance in disguise made perfect sense under the facts of that case. In contrast, requiring *all* area variance applicants to meet the test for a use variance, that is, to demonstrate that there is no reasonable *use* of the property without a variance, makes little sense. Such a strict standard bears no relationship to the purpose of area zoning, as distinct from use zoning. And, to the extent that it makes all variances nearly unobtainable, it is inconsistent with the language of the enabling statute, which vests boards of adjustment with broad quasi-judicial authority to grant variances for minor deviations from zoning restrictions in order to do substantial justice. *See* Wis. Stat. §§ 59.694(1) and (7)(c), 59.692(4)(b).

¶ 42. As it stands now, if an area variance applicant has *any* reasonable use of his property without a variance, a hardship will not exist and no variance can be issued. What this means as a practical matter is that any property owner currently putting his property to *some* use is disqualified from obtaining a variance to legalize even a minor zoning violation, and is therefore effectively precluded from making otherwise fully legal improvements to his property. For example, a property owner whose home encroaches into the side yard setback in a de minimus way, say, by a foot (perhaps because of a surveyor's error or builder's mistake), will be unable to obtain a building permit to remodel his kitchen or add a deck, because he will never be able to meet the "no reasonable use of the property" test for an area variance to legalize the setback violation. Similarly, a lake homeowner whose home conformed to the shoreline setback when built but no longer does due to shoreline erosion, will be prevented from improving his home, at least to the extent that the improvements

require a government permit and therefore a variance for the shoreline setback violation that developed over time due to natural causes.

¶ 43. Adequate variance procedure is a practical and legal necessity in the day-to-day administration of modern zoning codes. Use and area zoning are distinct, and exist to promote different types of neighborhood uniformity: uniformity of use, of course, in the former; and uniformity of lot and building size, for example, in the latter. Floodplain zoning exists for the more specific purposes of promoting public health and safety and protecting private property from flood damage.

¶ 44. "Obtaining a variance because of unnecessary hardship is the recognized and approved legal device by which the basic constitutional right of property is reconciled with the paramount right of government to protect by zoning the public health, safety, morals and welfare." McQuillin, *supra* § 25.166. Variances "are designed to afford a protective device against individual hardships, to provide relief against unnecessary and unjust invasions of the right of private property, and to provide a flexibility of procedure necessary to the protection of constitutional rights." *Id.* at § 25.160.

¶ 45. The unnecessary hardship standard "is *neither* the same nor as demanding as a takings analysis." 3 Yokley, *supra* § 21–5 at 86 (Supp. 2000) (emphasis in original). However, the "no reasonable use" test for unnecessary hardship in a use variance case has something of a constitutional ring to it. *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992)(holding that a zoning regulation which deprives property of all economically beneficial or productive use is a categorical regulatory taking). This is

generally *not* true of the test for unnecessary hardship in an area variance case:

> The hardship that is required for a use variance, i.e., hardship that equates with a lack of a reasonable return or destruction of all beneficial use of the property, has constitutional overtones. The hardship, or practical difficulty, required for a nonuse variance does not, in most states, have those constitutional overtones. In many cases the hardship or practical difficulty necessary for a nonuse variance will consist of the unnecessary deprivation of the full enjoyment of a permitted use.

3 Ziegler, *supra* § 38.02, at 38–22–23.

¶ 46.   Sensible standards for the issuance of area and use variances—standards that bear some relationship to the distinct purposes underlying area and use zoning—are critical to the regulatory "escape valve" function of variance procedure:

> It has been said that to preserve the validity of the zoning ordinance in its application to the community in general, the variance provision of the enabling act functions as an "escape valve," so that when regulations that apply to all are unnecessarily burdensome to a few because of certain unique circumstances a means of relief from the mandates of the ordinance is provided.

Yokley, *supra* § 21–2, at 264.

¶ 47.   Clearly, then, while variance procedure exists in part to prevent zoning regulations from operating in such a way as to render private property useless (and therefore avoid regulatory takings), its purposes encompass far more than that alone. "The purpose of variances in the broadest sense is the rendering of justice in unique and individual cases of practical difficulties or unnecessary hardships arising

from literal application of zoning ordinances." McQuillin, *supra* § 25.172. Limiting the availability of area variances to those situations that resemble regulatory takings operates to unreasonably prevent private property owners from making even highly beneficial, completely legal improvements to their property. Requiring all area variance applicants to demonstrate "no reasonable use of the property" runs counter to the broader purposes of variance procedure.

¶ 48.   Thus, the general rule allowing area variances upon a lower standard than that which is required for use variances finds its justification in the fundamental purposes of variance procedure:

> The prime justification for requiring less of an applicant for an area variance than is required in the case of a use variance is that the former does not affect the use of the land. An area variance is thought not to threaten adjacent land with the establishment of an incompatible use, or to hazard the maintenance of a use which will change the essential character of a neighborhood. Such a variance has some capacity to impose an adverse effect on adjacent land, and standards must be imposed to insure the protection of neighboring property, but in the case of area variances, it is assumed by most courts that adequate protection of the neighborhood can be effected without the imposition of the stringent limitations which have been developed in the use variance cases.

Young, *supra* § 20.48, at 581.

¶ 49.   *Snyder* was consistent with these longstanding principles of variance law. *Kenosha County* was not.[14] Overruling the latter is not a mere exercise

---

[14] The dissent incorrectly characterizes *Kenosha County* as merely "clarifying" the "proposed binary analysis" in *Snyder*.

of judicial will, but a necessary and justified restoration of balance and coherence to variance law in this state.

■

¶ 50. This is not to say that area variances should be, or are, automatic or easy to obtain. "The power to grant a variance is an exceptional one and it is said should be sparingly exercised." Yokley, *supra* § 21–4, at 83 (Supp. 2000); *see also* Young, *supra* § 20.23, at 497 ("courts have repeatedly emphasized that the exceptional power to grant variances should be used sparingly, and never simply to enable one landowner to enhance his income at the expense of his neighbors, or to the detriment of the community plan"). The burden is on the applicant to prove unnecessary hardship, and this "burden of proof is heavy; the reasons for granting a variance must be substantial." *Id.* § 20.20, at 479. It bears emphasizing that variances—whether from use *or* area restrictions—can never be authorized when contrary to the public interest.

¶ 51. What remains, then, is to examine the record in this case against *Snyder*'s "unnecessarily burdensome" test for an area variance. Deferring as we must to the Board's discretion, I agree with the circuit

Dissent at ¶ 138. *Snyder* was not a mere "proposal." It was the law. And (at the risk of overemphasizing this point), *Kenosha County* did not merely "clarify" *Snyder*, it overruled it *sub silentio* by adopting a single, "no reasonable use" test for all variances. On this point the concurrence, too, is wrong. *Kenosha County* cannot be explained away. Clarity in this area requires that the decision be overruled. Strained attempts to "explain" or "clarify" an erroneous precedent in order to avoid the difficult step of overruling it, tend to generate confusion and ultimately disrespect for the law.

court that the record supports the Board's conclusion that compliance with the strict letter of the basement floor elevation requirements of the Ordinance would be unnecessarily burdensome under the circumstances of this case.

¶ 52.    The State considers the Warnings' home to be an "illegal structure." To bring it into compliance with flood elevation requirements (regardless of whether they added a sun porch), the Warnings would have to fill in the basement or move the house. The hardship suffered under either scenario—basically, the complete loss of the basement—is substantial, far outweighing the benefits of enforcing the strict letter of the flood elevation requirements. True, one sure way to avoid basement flood damage is to get rid of the basement altogether, but this is such regulatory overkill under the circumstances of this case that the Board's action in granting the variance was completely justified.

¶ 53.    Furthermore, the hardship is unique to the property and not "self-created" to the extent that the Warnings built their home (with the nonconforming basement floor) pursuant to and in reliance upon a building permit duly issued by the Town of Bovina. They have been unreasonably and unnecessarily prevented from making conforming and beneficial improvements to their property because of the basement floor violation. Legalizing the basement by issuing a variance is not contrary to the public interest and does not have a detrimental impact on neighborhood character. Since the sun porch itself will comply with floodplain regulations, the variance does not increase the nonconformity and therefore does not defeat the purpose of the floodplain ordinance, which is

to minimize flood damage and protect health and safety. Accordingly, applying the proper variance test and standard of review, I conclude that the record supports the Board's finding of unnecessary hardship sufficient to justify a variance in this case.

## IV

¶ 54. The court of appeals also held that Wis. Admin. Code § NR 116.13(2) foreclosed the issuance of any variance that has the effect of allowing a residential basement floor below the regional flood elevation. The State did not make this argument before the Board, but raised it for the first time in the circuit court. Relying on *Goranson v. DILHR*, 94 Wis. 2d 537, 545, 289 N.W.2d 270 (1980), the circuit court held that the State had waived the § NR 116.13(2) argument. The court of appeals disagreed, concluding that the Warnings had failed to address the State's argument against waiver and therefore conceded the issue was not waived.

¶ 55. It is settled law that to preserve an issue for judicial review, a party must raise it before the administrative agency. Judicial review of administrative agency decisions contemplates review of the record developed before the agency.[15] Ordinarily an appellate court will not consider issues beyond those properly raised before the administrative agency, and a failure

_____

[15] *Omernick v. DNR*, 100 Wis. 2d 234, 248, 301 N.W.2d 437 (1981) *cert. denied*, 454 U.S. 883 (1981) (citing *Cobb v. PSC*, 12 Wis. 2d 441, 107 N.W.2d 595 (1961)) (referring to review pursuant to ch. 227).

to raise an issue generally constitutes a waiver of the right to raise the issue before a reviewing court.[16]

¶ 56.    One exception to this rule permits consideration of an issue otherwise waived if all the facts are of record and the issue is a legal one of great importance.[17] Whether § NR 116.13(2) prohibits boards of adjustment from granting variances for residential floors below regional flood elevation is a question of law that has been briefed in this court by both parties and is an issue of great importance to property owners, the DNR, boards of adjustment and the courts. Accordingly, we will look past the waiver in this case and decide the issue.

¶ 57.    Wisconsin Admin. Code § NR 116.13(2) provides:

> RESIDENTIAL USES. (a) Any structure or building used for human habitation (seasonal or permanent), which is to be erected, constructed, reconstructed, structurally altered or moved into the floodfringe area shall be placed on fill with the

---

[16] *Goranson v. DILHR*, 94 Wis. 2d 537, 545, 289 N.W.2d 270 (1980); *Gallagher v. Industrial Comm'n*, 9 Wis. 2d 361, 368, 101 N.W.2d 72 (1960).

[17] "The usual reasons for not considering such questions are not present here in that there is no problem of an incomplete record, and the opposing party has had the opportunity to brief the question and present its arguments. This court has said that whether it should review an issue raised here for the first time depends upon the facts and circumstances disclosed by the particular record. The question is one of administration not of power. [citations omitted] Since the issue raised concerns the jurisdiction of the board of review, a subject properly reviewable on certiorari, it should be considered."

*State ex rel. Gen. Motors Corp. v. Oak Creek*, 49 Wis. 2d 299, 319–20, 182 N.W.2d 481 (1971).

finished surface of the lowest floor, excluding basement or crawlway, at or above the flood protection elevation. If any such structure or building has a basement or crawlway, the surface of the floor of the basement or crawlway shall be at or above the regional flood elevation and shall be floodproofed to the flood protection elevation in accordance with s. NR 116.16. *No variance may be granted to allow any floor below the regional flood elevation.* An exception to the basement requirement may be granted by the department, but only in those communities granted such exception by the federal emergency management agency (FEMA) on or before March 1986 (emphasis added).

¶ 58.    The rule flatly prohibits *any* variance that would allow a residential floor below the regional flood elevation, unless the Federal Emergency Management Agency (FEMA) has granted a community-wide exception, a circumstance both parties concede is not present here. The court of appeals held that § NR 116.13(2) prohibited the issuance of a variance for the Warnings' basement.

¶ 59.    However, the administrative rule stands in direct conflict with state statute. To the extent that it administratively prohibits *all* variances in a certain class of cases, it conflicts with the general grant of authority to county boards of adjustment over variance decisions. *See* Wis. Stat. § 59.694(1) and (7).

■■■

¶ 60.    An administrative agency cannot exercise its rulemaking authority in contradiction of the will of the legislature as expressed in the statutes. *See* Wis. Stat. §§ 227.10(2) ("[n]o agency may promulgate a rule which conflicts with state law") and 227.11(2)(a); *Seider v. O'Connell*, 2000 WI 76, ¶ 24, 236 Wis. 2d 211, 612 N.W.2d 659. This administrative rule purports to

circumscribe the authority over variance decisions that the legislature has explicitly vested in local boards of adjustment.

¶ 61.   There is nothing in the DNR's general grant of authority to regulate floodplains that permits the agency to write rules that nullify the discretion over variance decisions that the legislature has specifically committed to local boards of adjustment. Thus, to the extent that § NR 116.13(2) prohibits county boards of adjustment from granting variances from flood elevation requirements where the proper statutory standards for such variances have otherwise been met, it is invalid.[18] Accordingly, the rule is no impediment to our sustaining the variance here.

## V

¶ 62.   The court of appeals decided this case on the basis of *Kenosha County* and § NR 116.13(2) and therefore did not address whether the issuance of the variance was consistent with the procedures and standards of the Outagamie County Shoreland-Floodplain-Wetland Zoning Ordinance. We conclude that it was.

¶ 63.   The Ordinance promulgates the variance statute at the local level, and authorizes the Board to

---

[18] The dissent characterizes this conclusion as a "judicial grant" of "plenary power" to boards of adjustment that undermines the DNR's ability to regulate floodplains. To the contrary, this conclusion merely recognizes and gives effect to a *legislative* grant of power to boards of adjustment. The DNR is free to regulate floodplains to its heart's content, provided it does so consistently with the statutes. The legislature, however, has explicitly committed variance decisions to local boards of adjustment, not the DNR. Wis. Stat. § 59.694(1).

grant variances which are not contrary to the public interest where, "owing to special conditions unique to the property, a literal enforcement [of the zoning code] will result in unnecessary hardship, so that the spirit of the chapter shall be observed, public safety and welfare secured and substantial justice done." Ordinance § 16.40(2)(b); Wis. Stat. § 59.694(7)(c). Section 16.40(4) of the Ordinance sets out the procedure for the issuance of a variance, and also provides:

> In all cases, a variance:
>
> (a)  Shall not permit any change in established flood elevations or profiles.
>
> (b)  Shall not be granted for a condition that is common to a group of adjacent lots or premises.
>
> (c)  Shall not be granted unless it is shown that the variance will not be contrary to the public interest or damaging to the rights of other persons or property values in the area.
>
> (d)  Shall not be granted for actions which require an amendment to this chapter, the maps or other ordinances of the county.
>
> (e)  Shall not have the effect of allowing or expanding a use or structure which is prohibited in that zoning district.
>
> (f)  Shall not be granted solely on the basis of economic gain or loss.
>
> (g)  Shall not be granted for a self created hardship.
>
> (h)  Shall not permit a lower degree of flood protection in the floodway area than the flood protection elevation, as defined in § 16.05. In the flood fringe area a lower degree of flood protection than the

flood protection elevation may be allowed pursuant to § 16.35(2).

¶ 64. The Board concluded that the Warnings were facing a unique and unnecessary hardship sufficient to meet the criteria for a variance under the Ordinance. The State, however, argues that according to § 16.40(4)(h), variances for deviations from floodproofing requirements are allowed only pursuant to § 16.35(2), and that section does not allow variances for nonconforming structures that are used for human habitation. Thus, according to the State, the Warnings are ineligible for a variance under the Ordinance. We disagree.

¶ 65. Section 16.32(4)(b)(2) of the Ordinances establishes the zoning standards for development in flood fringe areas and specifically allows variances for basement floors below regional flood elevation in buildings used for human habitation, referring back to the variance procedures in § 16.40. Section 16.40(4)(h) allows for variances under these circumstances, and refers back to § 16.35. Section 16.35(2) provides:

16.35 *EXISTING STRUCTURES IN FLOOD FRINGE AREAS.* (1) All modifications or additions to any nonconforming structure which do not exceed 50% of its assessed value adjusted to the most current equalized value for the municipality shall be placed on fill or protected by floodproofing measures pursuant to § 16.32(4) of this chapter. No structural modification or addition to any nonconforming structure as long as such use continues shall exceed 50% of its assessed value for the municipality, unless the entire structure is permanently changed to a conforming structure with a conforming use.

(2) Where compliance with the provisions of the above section would result in unnecessary hard-

ship and *only where the structure will not be either used for human habitation or be associated with high flood damage potential*, the Board of Adjustment using the procedure in § 16.40 may grant a variance from these provisions in accordance with the criteria listed below. Modifications or additions to structures or buildings which are protected to elevations lower than the flood protection elevation may be permitted if:

    (a)   Human lives are not endangered.

    (b)   Public facilities, such as water and sewer, are not to be installed.

    (c)   Flood depths will not exceed 4'.

    (d)   Flood velocities will not exceed 2' per second.

    (e)   The structure will not be used for storage of materials described in § 16.32(4)(e) (emphasis added).

¶ 66.   Thus, the Ordinance seems to both allow *and* disallow variances for residential basement floors below regional flood elevation. What §§ 16.32 and 16.40 expressly authorize, § 16.35 prohibits. The conflict between these provisions is essentially irreconcilable. We generally attempt to harmonize conflicting statutory provisions to give effect to the leading idea behind the statute. *See State v. Schaller*, 70 Wis. 2d 107, 110, 233 N.W.2d 416 (1975). Where one provision in a statute renders another a nullity, it is not given effect. *Yanta v. Montgomery Ward & Co.*, 66 Wis. 2d 53, 66, 224 N.W.2d 389 (1974). We conclude, therefore, that § 16.35(2) is unenforceable to the extent that it purports to completely prohibit variances for residential basement floors below regional flood elevation.

¶ 67.   In any event, § 16.35(2) refers back to § 16.35(1), which, although awkwardly phrased,

appears to exclude from variance requirements any additions to existing nonconforming structures which do not exceed 50 percent of the structure's value, so long as the addition is placed on fill or otherwise flood-proofed. There is no evidence that the Warnings' proposed sun porch exceeds 50 percent of the home's value. Furthermore, the sun porch will be placed on fill at or above the flood protection elevation. Therefore, the issuance of the variance does not increase the nonconformity in violation of the Ordinance.

## VI

¶ 68. In summary, I would overrule *Kenosha County* and restore the distinction between use and area variances in the law of zoning in this state. I conclude that "unnecessary hardship" for purposes of a use variance is established when it is shown that no reasonable use of the property is feasible without a variance. "Unnecessary hardship" for purposes of an area variance is established when it is shown that strict compliance with an area restriction would unreasonably prevent the property owner from using the property for a permitted purpose or is otherwise unnecessarily burdensome.

¶ 69. Both standards are considered in light of the purpose of the zoning restriction in question and with the goal of doing substantial justice as between the individual property owner and the community. The reasons for granting either type of variance must be substantial and not contrary to the public interest or detrimental to the community plan. Considered against the proper standard, and deferring to the discretion of the Board of Adjustment as the statutorily designated arbiter of local zoning disputes, I conclude

that the Board's issuance of a variance to the Warnings under the circumstances of this case was justified.

¶ 70. Further, we conclude that Wis. Admin. Code § NR 116.13(2) conflicts with Wis. Stat. § 87.30(1g) and is therefore invalid to the extent that it prohibits all variances for residential floors below regional flood elevation. Finally, we conclude that the Board's action complied with the procedures in the Outagamie County Shoreland-Floodplain-Wetland Zoning Ordinance. The variance in this case is fully consistent with the spirit of the Ordinance, public safety and welfare, and substantial justice.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 71. N. PATRICK CROOKS, J. *(concurring)*. I concur with the lead opinion and mandate, but reach the conclusion to reverse the court of appeals and affirm the issuance of a variance by a different route. I write separately because I see no reason to overrule *State v. Kenosha County Bd. of Adjustment*, 218 Wis. 2d 396, 577 N.W.2d 813 (1998). *Stare decisis* is a cornerstone of the judicial process, and, absent a compelling reason to overrule precedent, this court should abide by that precedent. *CBS, Inc. v. LIRC*, 219 Wis. 2d 564, 586–87, 579 N.W.2d 668 (1998) (Crooks, J., concurring).

¶ 72. I agree with the lead opinion's analysis of Wis. Admin. Code § NR 116.13(2) and Outagamie County Shoreland-Floodplain-Wetland Zoning Ordinances §§ 16.32, 16.35, and 16.40. It is with the lead opinion's interpretation of the "unnecessary hardship" standard that I part company, however. The "unnecessary hardship" standard was addressed in *Snyder v.*

*Waukesha County Zoning Bd. of Adjustment*, 74 Wis. 2d 468, 247 N.W.2d 98 (1976). Prior to the time *Snyder* was decided, area variances apparently were granted based upon a showing of "practical difficulties" which was "something much less severe than unnecessary hardship." *Id.* at 473. Use variances, in contrast, were granted upon a showing of "unnecessary hardship." *Id.* *Snyder* eliminated that distinction.

> [W]e think that there should be no significant practical distinction drawn between the terms unnecessary hardship and practical difficulties, and where it appears, the phrase "practical difficulty or unnecessary hardship" should be construed as a whole, for where peculiar and exceptional practical difficulties, which justify a variance, exist, unnecessary hardship will also exist.

*Id.* at 474 (citation omitted). Whether an area or use variance should be granted depends upon the purpose underlying the specific provision of the zoning code to which a variance is being sought. *Id.* at 473. This is evident from what the lead opinion has already quoted from *Snyder*, and it is worth repeating:

> [A]rea variances are not more easily obtained because practical difficulties are something much less severe than unnecessary hardship, but because area variances do not involve great changes in the character of neighborhoods as do use variances. This relates to what hardships or practical difficulties *may be considered unnecessary or unreasonable in light of the purpose of the zoning law*.

*Id.* (emphasis added).

¶ 73. *Kenosha County* did not explain the differences, if any real differences existed after *Snyder*, between area and use variances and the applicable

tests for granting such variances. Instead, this court specifically refused to reach that issue.

> Both parties, and the court of appeals, have spent some time trying to differentiate, either in words or in application, the tests for granting a use variance and an area variance. [However, n]either party disputes that Huntoon has requested an area variance. Thus, for purposes of this case, we need not decide whether there is a difference between the two types of variances, and what that difference may be.

*Kenosha County*, 218 Wis. 2d at 412 n.10. *Kenosha County* did consider the parties' definitions of the unnecessary hardship standard in light of the purpose of the shoreland zoning regulations at issue. The State proffered a "no reasonable use in the absence of a variance" standard; the Board proffered an "unnecessarily burdensome" standard.[1] *Id.* at 411–12. This court concluded that the State's test better incorporated the purpose underlying the regulations, "to enforce a uniform setback that preserves the public's interest in

---

[1] Even though the court declined to comment on the difference between an area and use variance, the two tests proffered followed the two alternatives of *Snyder*'s area variance unnecessary hardship standard.

> When considering an area variance, the question of whether unnecessary hardship or practical difficulty exists is best explained as "[w]hether compliance with the strict letter of the restrictions governing area, set backs, frontage, height, bulk or density would unreasonably prevent the owner from using the property for a permitted purpose *or* would render conformity with such restrictions unnecessarily burdensome." 2 Rathkopf, *The Law of Zoning and Planning* 45–28 (3d ed. 1972).

*Snyder v. Waukesha county Zoning Bd. of Adjustment*, 74 Wis. 2d 468, 474–75, 247 N.W.2d 98 (1976) (emphasis added).

shoreland and the navigable waters of the state." *Id.* at 413.

¶ 74. *Kenosha County*, like *Snyder*, reiterated that "whether a particular hardship is unnecessary or unreasonable is judged against the purpose of the zoning law." *Kenosha County*, 218 Wis. 2d at 412–13. Within this general parameter, county boards of adjustment have some very real flexibility in granting variances. The boards can determine, by looking to the purpose underlying the ordinance at issue, what reasonably constitutes an unnecessary hardship. Implicit in considering the variance request in relation to the ordinance's purpose is consideration of the nature of the restriction in the ordinance. That is, boards of adjustment should also consider whether the restriction involves, for example, "set backs, frontage, height, bulk or density" (*Snyder*, 74 Wis. 2d at 475), or whatever restriction is at issue. Consideration of a variance request as it relates to the purpose of the zoning ordinance, along with review of the specific restriction at issue, must necessarily take into account the differences resulting from the granting of an area or use variance. Indeed, "because area variances do not involve great changes in the character of neighborhoods as do use variances," the purpose of the zoning ordinance may not be so likely undermined by an area variance as it might be by a use variance.

¶ 75. That the county boards of adjustment have flexibility in granting and denying variances is reflected in the standard by which courts review decisions of the boards. This, too, was reiterated in *Kenosha County*.

> Reviewing courts accord a decision of a board of adjustment a presumption of correctness and valid-

ity. A reviewing court may not substitute its discretion for that committed to the Board by the legislature. However, when a Board of Adjustment acts on application for a variance, it acts in a quasi-judicial capacity. The Board's action must be based upon evidence. On certiorari review, a reviewing court applies the substantial evidence test to ascertain whether the evidence before the Board was sufficient. If any reasonable view of the evidence would sustain the findings of the Board, the findings are conclusive.

218 Wis. 2d at 415–16 (internal citations omitted).

¶ 76. Accordingly, this court presumes that the Outagamie Board of Adjustment's decision is correct and valid. At issue here are shoreland/floodplain/wetland ordinances which may have some overlapping purposes with the shoreland ordinances at issue in *Kenosha County*. According to the Board's findings here, however, it did not consider the purpose underlying that ordinance. The Board did not contemplate whether the Warnings' hardship—that they would have to fill in the basement, or be forced to sell the house with a non-conforming basement, or move the house onto a conforming basement—was unnecessary or unreasonable in order to protect the public health and welfare in the flood fringe district where the Warnings resided.[2] Nor did the Board consider whether, per *Kenosha County*, there was "no reasonable use in the absence of a variance." The Board may have concluded that the Warnings would have had some reasonable use of their property without a vari-

---

[2] The unnecessary hardship here is not that the Warnings are not allowed to build a sun porch. The hardship is that they have a non-conforming basement, resulting in the problems noted herein.

ance—that is, they need only fill their basement or move their house. However, the "no reasonable use" language of *Kenosha County* should have been applied by the Board only after considering the purpose of the zoning ordinance, and the nature of the specific restriction at issue. A reviewing court should then look at whether the Board considered such matters when applying the presumption of correctness and validity and the substantial evidence test.

¶ 77. Because the Outagamie County Board of Adjustment did not consider the purpose of the underlying ordinance or *Kenosha County*'s "no reasonable use" test, this case might be remanded to the Board to determine whether the Warnings are entitled to a variance in consideration of the purpose of the ordinances at issue and the nature of the restriction involved. However, remand is not necessary because the Board properly considered that a variance was in order, due to the fact that the Warning's hardship had been caused "by the Town of Bovina and the building inspector."[3] (*See* Outagamie County Board of Adjustment's findings at ¶ 17 of the lead opinion.)

---

[3] The building permit was granted by the "Town Building Inspector," however, the heading on the document indicates that it was from the Office of the Building Inspector, Outagamie County, and was directed to the Outagamie County Building Inspector.

The Outagamie County Board of Adjustment did not find that the County Planning and Zoning Administration may have added to the Warnings' hardship, but it appears that the Board could have. The Board found that the Outagamie County Zoning Department was not contacted, at the time that the Town had issued the Warnings a building permit, regarding issuance of a shoreland zoning permit. (There is no indication that the Department is different than the Planning and Zoning Administration.) *According to 1995 correspondence from the Planning*

¶ 78.  The Outagamie County Board of Adjustment apparently realized that the circumstances here effectively estopped the Board from denying the Warning's variance request. Apparently, the Warnings needed, in addition to the building permit from the Town of Bovina, a zoning permit from the County. Although the Warnings needed the additional zoning permit, there is no contention that the building permit issued was invalid. The Town had issued a building permit, upon which the Warnings depended in building their house. Consequently, we do not have before us the situation that existed in *Snyder*, where the variance applicant had proceeded with construction before he obtained a permit—which would have been an "unauthorized act[ ]" of a municipal officer and "void as issued for a structure which is forbidden by the ordinance." 74 Wis. 2d at 477. Nor do we have before us the situation where a subordinate municipal officer acted erroneously, and the municipality later sought to enforce a zoning ordinance.[4] *See Willow Creek Ranch v.*

and Zoning Administration to the Warnings, however, the Administration had a "record of. . .the building permit issued by the Town." It seems apparent that the County was on notice, at some point, that the Warnings had a building permit, but not the necessary shoreland zoning permit. Yet, the County did nothing until 1995. Consequently, it appears that the County was as much a part of causing the Warning's hardship as the Town.

[4] The dissent has ignored the important distinction between this case and *Snyder*, 74 Wis. 2d 468, and *Willow Creek Ranch v. Town of Shelby*, 2000 WI 56, ¶ 56, 235 Wis. 2d 409, 611 N.W.2d 693. In *Snyder* and *Willow Creek*, the applicant attempted to assert estoppel to prevent the municipality from enforcing its zoning ordinance. *Snyder*, 74 Wis. 2d at 476; *Willow Creek*, 2000 WI 56 at ¶ 49. "Although municipalities are not wholly immune from the doctrine of equitable estoppel, it is well

*Town of Shelby*, 2000 WI 56, ¶ 56, 235 Wis. 2d 409, 611 N.W.2d 693; *Milwaukee v. Leavitt*, 31 Wis. 2d 72, 78, 142 N.W.2d 169 (1966); *see also Jelinski v. Eggers*, 34 Wis. 2d 85, 94, 148 N.W.2d 750 (1967) ("[E]stoppel should not apply to an adjacent property owner seeking enforcement of the ordinance who was in no way responsible for the issuance of the building permit."). Rather, this case is closer to *Russell Dairy Stores v. Chippewa Falls*, 272 Wis. 138, 74 N.W. 759 (1956), wherein the city had issued a permit to cut a curb and construct a driveway, and then subsequently rescinded the permit. *Id.* at 141–42. Here, the Town of Bovina issued a building permit without also, at the very least, notifying the Warnings that they also needed a zoning permit to proceed. For the County not to grant an after-the-fact variance—11 years after the fact—would be akin to rescinding a permit after the Warnings had long relied upon it.

¶ 79. Typically, equitable concerns, such as estoppel, would be considered during an enforcement action. *See, e.g., Forest County v. Goode*, 219 Wis. 2d 654, 681–82, 579 N.W.2d 715 (1998). However, we are faced with unique circumstances here that required

established that erroneous acts or representations of municipal officers do not afford a basis to estop a municipality from enforcing zoning ordinances enacted pursuant to the police power." *Willow Creek*, 2000 WI 56 at ¶ 49 (citing, among others, *Snyder*, 74 Wis. 2d at 476–77) (footnote and other citations omitted). However, here, in contrast, it is the Outagamie Board of Adjustment which has apparently considered that it was estopped from enforcing its zoning ordinances. There is nothing in *Snyder, Willow Creek*, or any of our other cases that suggests that a County Board of Adjustment cannot consider estoppel, when determining whether or not to grant a variance from the County's ordinance.

the Outagamie Board of Adjustment to consider estoppel in concluding that the Warnings faced an unnecessary hardship. In applying the substantial evidence test, I am satisfied that a reasonable view of the evidence supports the Board's findings that the Town of Bovina and the building inspector caused the Warnings' predicament, and those findings are conclusive. *Kenosha County*, 218 Wis. 2d at 416. Similarly, as noted previously, the Board's decision is entitled to a presumption of correctness and validity. *Id.* at 415.

¶ 80.   In sum, I agree with the lead opinion that the Outagamie County Board of Adjustment correctly issued a variance to the Warnings. However, I find no compelling reason to overrule *Kenosha County*. Instead, I read *Kenosha County* as applying the rule from *Snyder*, that the purpose of the ordinance guides the determination of whether there is an unnecessary hardship that would warrant a variance. I recognize that the Board did not consider the purpose of the ordinances at issue in granting the Warnings a variance for their non-conforming basement, in order to obtain a permit to build a sun porch. However, the Board "proceeded on a correct theory of law" in concluding, in effect, that it was estopped from doing otherwise. *Kenosha County*, 218 Wis. 2d at 410. For these reasons, I respectfully concur with the lead opinion and the mandate.

¶ 81.   I am authorized to state that Justice JON P. WILCOX joins this opinion.

¶ 82.   DAVID T. PROSSER, J. *(concurring)*. I join the lead opinion in this case for several reasons. First, the law on zoning variances must be reexamined and clarified. Second, the State's reliance on Wis. Admin.

Code § NR 116.13(2) in these circumstances is disturbing. Third, the result of an affirmance would be unjust.

¶ 83. I wholeheartedly support the lead opinion's call to overrule *State v. Kenosha County Board of Adjustment,* 218 Wis. 2d 396, 577 N.W.2d 813 (1998). A strong argument can be made that the Kenosha County Board of Adjustment should not have granted a variance to the property owner in that case because the variance would have permitted the construction of a deck within 64 feet of the shoreline, thereby breaching the 75-foot setback standard. Nonetheless, in overturning the Board's decision, the court virtually obliterated the authority of boards of adjustment to grant area variances under limited but reasonable circumstances.

¶ 84. The State's reliance on the administrative rule to block the variance here requires more extended comment.

I

¶ 85. The Warnings received a building permit on April 25, 1984. They built a home relying on that permit. Their ranch home with basement was constructed 96 feet back from the center of a state highway and between 350 and 400 feet away from a small river.

¶ 86. Eleven years later, the Warnings applied for a permit to add a ground level sun porch to their home. The Outagamie County Zoning Administrator denied their request, indicating that the basement violated the Outagamie County Shoreland-Floodplain-Wetland Ordinance (the Ordinance) because it was below the regional flood elevation.

¶ 87. After they received the denial, the Warnings petitioned the Outagamie County Board of Adjustment for a variance to keep their basement and

become eligible for a new building permit.[1] They appeared at a public hearing on November 1, 1996, and presented their case. They explained that there had been no attempt to violate the Ordinance. They had obtained a building permit and relied on the building permit. Their attorney, Richard Carlson, stated that it would have been easy, before construction of the house, to elevate the basement by adding additional fill if the Warnings had only received notice. Both Mr. and Mrs. Warning expressed surprise that basements were a problem. Barbara Warning commented that "all the homes in the neighborhood are much lower than what we are and they all have full basements, but they were built before the ordinance was put into place." David Warning added: "No one knew that you could not have a basement there. I mean everybody up and down the whole road has got basements in." When the zoning administrator was asked by a board member whether there were other homes in the neighborhood with basements built prior to the ordinance, he acknowledged that there were "a lot of them."

¶ 88. The zoning administrator opposed the variance. He was joined in opposition by Richard Koch, Water Management Coordinator for the Lake Michigan District of the Wisconsin Department of Natural Resources (DNR), who had received notice of the hearing, as the Ordinance requires. In an October 31, 1996, letter to the Board and in his personal appearance before the Board, Koch argued that the Warning ranch

---

[1] Our focus here is the basement, not construction of the sun porch. The variance application was a request to deviate from the basement flood protection elevation requirements. Construction of the proposed sun porch is a distinct and separate occurrence that would have ensued only after the favorable granting of the variance from basement elevation requirements.

home was "an illegal structure" in violation of the Ordinance. Koch wrote that the "Board of Adjustment cannot grant the requested variance because the variance criteria in section 16.40(4) of the ordinance cannot be met (e.g., any 'hardship' is self-created). . . .I ask the Outagamie County Board of Adjustment to *deny the application. . .for a variance to allow a basement floor to remain below the Regional flood elevation*" (emphasis added).

¶ 89.  Both the zoning administrator and the DNR representative framed their arguments in terms of the Warnings' inability to satisfy the criteria for a variance under the Ordinance. Neither the zoning administrator nor the DNR representative cited Wis. Admin. Code § NR 116.13(2)(June, 1996) as prohibiting the Board of Adjustment from granting any variance in these circumstances.

¶ 90.  At the conclusion of the hearing, the Board of Adjustment voted unanimously to grant the requested variance. The Board reasoned that the Warnings' hardship was caused by the Town of Bovina and its former building inspector who had negligently issued a building permit without obtaining clearance from the County. "The hardship is not based solely on economic gain or loss, [but] the loss [from filling in the basement] would be substantial." The Board also felt that the proposed addition to the home would comply with the floodproofing requirements because the sun porch would be two feet above the flood protection elevation.

¶ 91.  The State, at the request of the DNR, sought certiorari review in circuit court. The State advanced several arguments but repeatedly asserted that the Board had violated Wis. Admin. Code § NR 116.13(2) by granting the variance. The Warnings, in

turn, insisted that the State had waived that argument by not making it before the Board. Circuit Judge John A. Des Jardins agreed with the Warnings. In affirming the Board, the court found that the Warnings had at all times acted in good faith, that they had suffered a hardship that was not self-created, and that "the DNR did place into argument before that board a number of issues, but did not raise the issue of § NR 116.13(2) being more restrictive than the Outagamie County Floodplain-Wetland Ordinance, and it was not raised before the Board of Adjustment." The court therefore concluded that the issue had been waived.

¶ 92. Had the State stopped at this point, after having lost twice, this case about the legality of a 17-year-old basement never would have come to this court. But the State refused to stop. It appealed, and the court of appeals reversed. After addressing the Warnings' eligibility for a variance under the Ordinance, the court of appeals held that "even if the Warnings could meet the above requirements, we conclude that WIS. ADM. CODE § NR 116.13(2) forecloses the issuance of a variance to the Warnings for a basement that is below the regional flood elevation." *State v. Outagamie County Bd. of Adjustment*, No. 98–1046, unpublished slip op. at 8–9 (Wis. Ct. App. Sept. 22, 1998). The court observed that the State had not raised this issue before the Board of Adjustment:

> The State did not raise this issue before the board. The State argues, disingenuously, that it did not waive its argument under WIS. ADM. CODE § NR 116.13(2) because it was not a party at the administrative level. Although perhaps not a party in form, it certainly was in substance. The State appeared before the board and advanced arguments in objection to the Warnings' request for a variance.

> Generally, issues not raised before the agency cannot be raised on judicial review. *See Goranson v. DILHR*, 94 Wis. 2d 537, 545, 289 N.W.2d 270, 274 (1980). The Warnings, however, have failed to respond to the waiver argument and, therefore, it is deemed conceded. *See Charolais Breeding Ranches v. FPC Secs.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493, 499 (Ct. App. 1979).

*Id.* at 9 n.5.

## II

¶ 93.   After a board of adjustment has made its decision on a request for a variance, a person who is aggrieved by the decision, such as the applicant or the State, as well as an enumerated list of other interested persons, may commence an action in the circuit court "seeking the remedy available by certiorari." Wis. Stat. § 59.694(10).[2] The State followed that course in this case.

¶ 94.   In a certiorari action reviewing the decision of a board of adjustment, a court shall accord a presumption of correctness and validity to the board's decision. *Snyder v. Waukesha County Zoning Bd.*, 74 Wis. 2d 468, 476, 247 N.W.2d 98 (1976) (citing Richard W. Cutler, *Zoning Law and Practice in Wisconsin*, § 15, at 63 (1967)). In the context of this case, once the Board of Adjustment issued a variance, the State had the burden of overcoming the presumption of correctness of the Board's decision.

¶ 95.   Subsection (10) of Wis. Stat. § 59.694 specifically authorizes the circuit court to take additional evidence. In this case, the circuit court did not take additional evidence and was not urged by the State to

---

[2] Wisconsin Stat. § 59.694(10) is the former Wis. Stat. § 59.99(10) (1993–94).

do so. Hence, the standard of review is limited to: (1) whether the Board kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that the Board might reasonably make the order or determination in question. *Kenosha County*, 218 Wis. 2d at 410–11; *Snyder*, 74 Wis. 2d at 475.

¶ 96.   When courts apply these standards, they are not entitled to substitute their views for the discretion of boards. In *State ex rel. Brookside v. Jefferson County Board of Adjustment*, 131 Wis. 2d 101, 120–21, 388 N.W.2d 593 (1986), this court said:

> The *Snyder* court interpreted these four standards as requiring the circuit court to defer to the decision of the Board unless the Board's decision is "unreasonable and without a rational basis. . . .Thus, the findings of the board may not be disturbed if any reasonable view of the evidence sustains them. . . .The court may not substitute its discretion for that committed to the board by the legislature." 74 Wis. 2d at 476. We conclude that in *Snyder* the court adopted the same standard of review for statutory certiorari as for common law certiorari, at least when the circuit court takes no evidence.

¶ 97.   In certiorari review at common law, this court reviews the record of the board. *Edward Kraemer & Sons, Inc. v. Sauk County Bd. of Adjustment*, 183 Wis. 2d 1, 8, 515 N.W.2d 256 (1994). The first step in the review is to determine which facet of the board's action is challenged. "We then apply the portion of certiorari review applicable to that facet of the Board's action." *Id.* (citing *Snyder*, 74 Wis. 2d at 476).

¶ 98.   In the circuit court, the State asserted that the Board's decision "was beyond the Board's jurisdiction, erroneous and inadequate as a matter of law, and unsupported by the evidence."

¶ 99.   The Board's action interpreting the Ordinance was unquestionably subject to judicial review in line with the four traditional standards of review noted above. It is very disturbing, however, that appellate courts have reviewed Board action on the basis of legal objections that never were raised before the Board.

¶ 100.   Courts normally will not review an issue raised for the first time on appeal. *Allen v. Allen*, 78 Wis. 2d 263, 270, 254 N.W.2d 244 (1977); *Clay v. Bradley*, 74 Wis. 2d 153, 161, 246 N.W.2d 142 (1976); *Segall v. Hurwitz*, 114 Wis. 2d 471, 489, 339 N.W.2d 333 (Ct. App. 1983). The failure to make a timely objection constitutes waiver of the objection. *Saenz v. Murphy*, 162 Wis. 2d 54, 63, 469 N.W.2d 611 (1991); *Allen*, 78 Wis. 2d at 270.

¶ 101.   The waiver rule is a rule of judicial administration, although not an inflexible one. *Wirth v. Ehly*, 93 Wis. 2d 433, 444, 287 N.W.2d 140 (1980); *Northern State Power Co. v. Hunter Bd. of Supervisors*, 57 Wis. 2d 118, 132–33, 203 N.W.2d 878 (1973). Consequently, a court should be reluctant to fault a board of adjustment for not considering a legal argument that was never made. To expect clairvoyance from a board about an unstated objection to the board's action disrespects the board, undermines its authority, encourages gamesmanship, and alters the nature of certiorari review. It also deprives an adverse party of the opportunity to address the objection and make a record before the board.

¶ 102.   In this case, the State changed its position when it appeared in circuit court. It contended that

Wis. Admin. Code § NR 116.13(2) was more restrictive than the County Ordinance and superseded the Ordinance. The circuit court ruled that the State had waived this objection. Thereafter, the State devoted less than two pages of its brief to the court of appeals to make the argument that § NR 116.13(2) is the controlling law. Nevertheless, the court of appeals decided that the Warnings constructively conceded that the State's point had not been waived by failing to answer the argument.

## III

¶ 103.   The state's decision to rely on Wis. Admin. Code § NR 116.13(2) forces close examination of this rule, which reads:

> (2)   RESIDENTIAL USES. (a) Any structure or building used for human habitation (seasonal or permanent), which is to be erected, constructed, reconstructed, structurally altered or moved into the floodfringe area shall be place [sic] on fill with the finished surface of the lowest floor, excluding basement or crawlway, at or above the flood protection elevation. If any such structure or building has a basement or crawlway, the surface of the floor of the basement or crawlway shall be at or above the regional flood elevation and shall be floodproofed to the flood protection elevation in accordance with s. NR 116.16. No variance may be granted to allow any floor below the regional flood elevation. An exception to the basement requirement may be granted by the department, but only in those communities granted such exception by the federal emergency management agency (FEMA) on or before March 1, 1986.

Wis. Admin. Code § NR 116.13(2) (June, 1996).

¶ 104. There should be no mistake about what the State is up to here. It is seeking retroactive application of a rule that did not exist in its present form until after the Warnings had built their basement. The present form of the rule was not enacted until almost two years after the Warnings' house was constructed.

¶ 105. The rule in question, Wis. Admin. Code § NR 116.13, was part of a substantial revision of § NR 116 in 1986. The change took effect March 1, 1986. Cr. Register, Feb. 1986, No. 362. The revision entailed a significant toughening of § NR 116, which is evident in a number of sections. For example, the definition of "variance" was rewritten. The pre–1986 definition of "variance" in § NR 116.03(29) read:

> VARIANCE. A variance authorizes the construction or maintenance of a building or structure in a manner which is inconsistent with dimensional standards contained in the flood plain zoning ordinance. A variance can only be granted by the board of adjustment/appeals. A variance shall not permit a use of property otherwise prohibited by the flood plain zoning ordinance; *it may permit deviations from dimensional standards.*

Wis. Admin. Code § NR 116.03(29) (Register, Oct., 1985, No. 358) (emphasis added).

¶ 106. The revised definition of "variance" reads:

> "Variance" means an authorization by the board of adjustment or appeals under s. NR 116.21(4), for the construction or maintenance of a building or structure in a manner which is inconsistent with dimensional standards contained in the floodplain zoning ordinance.
>
> Note: A variance can only be granted by the board of adjustment or appeals. A variance may not permit a use of property otherwise prohibited by the

floodplain zoning ordinance *or allow construction not protected to the flood protection elevation*; it may, however, permit deviations from dimensional standards.

Wis. Admin. Code § NR 116.03(49) (June, 1996) (emphasis added). The revised definition seeks to exclude elevation from the scope of dimensional standards so that construction for a lawful use that does not meet a certain elevation cannot receive a variance based upon inconsistency with a dimensional standard.

¶ 107. The pre–1986 provision on residential uses in floodfringe areas (outside the floodway) was contained in Wis. Admin. Code § NR 116.14(2) and read:

> (2) RESIDENTIAL USES. (a) Any structure or building used for human habitation (seasonal or permanent), which is to be erected, constructed, reconstructed, altered, or moved into the flood fringe area shall be placed on fill, *with the finished surface of the first floor at or above the flood protection elevation. If any such structure or building has a basement, it shall be flood proofed in accordance with s. NR 116.16.* Any community that is eligible for the federal flood insurance program must comply with the HUD standards which currently do not allow basements in flood plain areas. An exception to that basement requirement may be granted by HUD, but only on a community-by-community basis.

Wis. Admin Code § NR 116.14(2) (Register, Oct., 1985, No. 358) (emphasis added).

¶ 108. In the old subsection, the focus is on the first floor elevation and floodproofing for a basement. That is very different from the revised rule that contains the sentence: "No variance may be granted to

673

allow any floor below the regional flood elevation." Wis. Admin. Code § NR 116.13(2) (June, 1996).

¶ 109. The pre–1986 provision on nonconforming uses in floodfringe areas appeared in § NR 116.15(4) and read:

(4) FLOOD FRINGE AREAS. (a) No modifications or additions to any existing structure or building in the flood fringe area shall be permitted unless such modifications and additions comply with the applicable regulations for that particular use in flood fringe areas as contained in the local ordinances.

(b) Where compliance with the provisions of par. (a) would result in unnecessary hardship, and only where the structure will not be either used for human habitation or be associated with a high flood damage potential, the county, city or village may grant a variance from those provisions, using the criteria listed below. Modifications or additions to structures or buildings which are protected to elevations lower than the flood protection elevation may be permitted if:

1. Human lives are not endangered;

2. Public facilities, such as water or sewer, are not to be installed;

3. Flood depths will not exceed 4 feet;

4. Flood velocities will not exceed 2 feet per second; and

5. The structure will not be used for storage of materials described in s. NR 116.14(6).

Wis. Admin. Code § NR 116.15(4) (Register, Oct., 1985, No. 358). This old subsection requires compliance with a local flood fringe ordinance. It authorizes prospective

variances under certain conditions and variance to nonconforming structures for modifications and additions.

¶ 110. The revised provision appears in § NR 116.15(3) and reads:

> (3) FLOODFRINGE AREAS. (a) Except as provided in par. (b) or (c), no modification or addition to any nonconforming building or any building with a nonconforming use in the floodfringe area may be allowed unless such modification or addition has been granted by permit, special exception, conditional use or variance and the modification or addition is placed on fill or is floodproofed in compliance with the applicable regulations contained in s. NR 116.13(2).

Wis. Admin. Code § NR 116.15(3) (June, 1996). This revised subsection refers back to § NR 116.13(2), with its "no variance" language.

¶ 111. The old administrative rules allowed variances for basements under certain circumstances. The present administrative rules allow "no variances" for basements.

¶ 112. What is the authority for these sweeping changes in Chapter NR 116? The Department of Natural Resources explained that Chapter NR 116 repeals and recreates rules interpreting Wis. Stat. § 87.30. Wisconsin Dep't of Natural Resources, *Order of the State of Wisconsin Natural Resources Board Repealing and Recreating Rules, WR–14–84*, at 1 (Nov. 22, 1985). A careful review of § 87.30 reveals that nothing in the statute either now or in the past has absolutely prohibited variances from being issued by a county board of adjustment in these circumstances. Section 87.30 was not amended in the period before the 1986 revision, so as to require a dramatic revision of Chapter NR 116. In

fact, the DNR justified the changes to Wis. Admin. Code § NR 116.13 as adherence to federal law:

> 6. *Basement and Dry Floodproofing Standards.* The language addressing basement development standards in s. NR 116.13 has been revised to more closely reflect what is required in the National Flood Insurance Program's floodplain management regulations. As a result, no residential development or variances for such development will be allowed to occur below the regional flood elevation. A community-wide exception to the basement standards applies to those municipalities which received the exception from the federal government prior to the effective date of the proposed rule.

Wisconsin Dep't of Natural Resources, *supra*, at 2.

¶ 113.   This writer's research has unveiled no federal regulation that absolutely prohibits the issuance of a variance for residential basements below the base flood elevation in a flood fringe area. On the contrary, 44 C.F.R. § 60.6 (2000) entitled, "Variances and exceptions," reads in part:

> (a)   The Administrator does not set forth absolute criteria for granting variances from the criteria set forth in §§ 60.3, 60.4 and 60.5. . . .While the granting of variances generally is limited to a lot size less than one-half acre (as set forth in paragraph (a)(2) of this section), deviations from that limitation may occur.

¶ 114.   The State cannot point either to a state statute or a federal regulation that absolutely prohibits a board of adjustment from granting a variance for a building used for human habitation in a floodfringe area. Consequently, as the lead opinion observes, Wis. Admin. Code § NR 116.13(2) is inconsistent with Wis. Stat. § 59.694(7) and appears to exceed statutory

authority when it deprives a county board of adjustment the discretion to issue *any* variance in an entire class of cases.

¶ 115.   Over the years, the State's uncompromising administration of the floodplain protection rules has led to several legislative measures that preclude a literal interpretation of Wis. Admin. Code § NR 116.13. For instance, Wis. Stat. § 87.30 has been amended several times since 1986. The section now explicitly permits the repair, reconstruction, or improvement of a nonconforming building damaged or destroyed by a nonflood disaster. Wis. Stat. § 87.30(1d). This statutory allowance is inconsistent with a literal reading of the administrative rule. In addition, the statute prohibits the DNR from promulgating any rule or imposing any restriction that:

> (a)   Results in an ordinance or other regulation containing provisions for floodproofed residential basements that are more restrictive than those imposed by the Federal Emergency Management Agency.
>
> (b)   Allows the department to deny an exception for such basements if the federal emergency management agency has granted an exception under 44 CFR 60.6.

Wis. Stat. § 87.30(1g).

¶ 116.   Subsection (1g), authored by Representative John Ainsworth, who represents the Village of Shiocton and the Town of Bovina in the Wisconsin Assembly, permitted the Village of Shiocton to enact a floodplain ordinance . with basements below the regional flood level after the Village received a FEMA

exception in 1998.[3] The Village of Shiocton is one-half mile south of the Warnings' home.

¶ 117.   Thousands of buildings across the state were built in floodfringe areas before the enactment of floodplain regulations. The language in Wis. Admin. Code § NR 116.13(2) cannot be read literally without depriving counties and the DNR of the ability to deal reasonably with these "existing lawful" structures. Wis. Admin. Code § NR 116.03(34). If the law did not afford some reasonable means to address variances for nonconforming structures, it might not pass constitutional muster. *Cf. Building Height Cases*, 181 Wis. 519, 532, 195 N.W. 544 (1923) (holding that an act of the legislature limiting the height of buildings was not applicable where substantial rights of a party had vested before the act was enacted); *County of Sauk v. Trager*, 113 Wis. 2d 48, 56, 334 N.W.2d 272 (Ct. App. 1983), *aff'd*, 118 Wis. 2d 204, 346 N.W.2d 756 (1984) (finding that where substantial rights have vested, zoning ordinances cannot be applied retroactively).

¶ 118.   The State has not played fair in this case. I join the lead opinion to return some common sense to the administration of our law.

¶ 119.   SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(dissenting)*. The lead opinion suggests that this case is about destroying a basement to save a house.[1] Dramatic, but a mischaracterization of the stakes in this case.

¶ 120.   This case is not about the future of the Warnings' basement or house. This case is about

---

[3] Sherry Breiting Rindt, *Basements Are Missed When They Are Missing*, The Post-Crescent, June 4, 1999, at B1.

[1] *See* lead op. at ¶¶ 1, 52.

whether the Warnings' home will have a sun porch. Giving truth to the adage that hard facts make bad law, this case is really about whether to undermine the authority of the Department of Natural Resources (DNR) to regulate floodplains and whether to ignore the principles of stare decisis—all to allow a homeowner to build a sun porch. This case makes bad law. I therefore dissent.

I

¶ 121.   At the outset, it is important to state what this case is all about. The Warnings are not being asked to destroy their basement. Neither the County nor the State has ever taken action to address the basement violation.[2] This case is about a sun porch for the Warnings, but the legal principles governing this case have a significant impact on the rest of the people of the State.

¶ 122.   The lead opinion suggests that the law should not bar homeowners like the Warnings, whose home is a "non-conforming structure" in the eyes of the law (albeit through no fault of their own), from adding a sun porch to their homes.[3]

¶ 123.   The owners' inability to add a sun porch follows, however, directly from state law—state law that restricts development in floodplain zones. Construction on floodplains is regulated by state statute, DNR rules, county, city, and village ordinances, and

---

[2] This is not an enforcement action commenced against an owner for a violation. If this case were an enforcement action, consideration of the equities might be appropriate. *See Forrest v. Goode*, 21 Wis. 2d 655, 681–82, 579 N.W.2d 715 (1998) (considerations given to equities in an enforcement action).

[3] *See* lead op. at ¶ 42.

federal statutes and regulations.[4] Indeed, the regulation of floodplains is, even to experienced practitioners in Wisconsin water law, a confusing amalgamation of federal, state, and local laws—laws not always internally consistent or consistent with each other.

¶ 124. Nevertheless, it is clear that the legislature has given the DNR, not a County Board of Adjustment, ultimate authority over floodplains. The applicable state statute is Wis. Stat. § 87.30. The legislature declared that the purpose of various statutes enacted in Chapter 614 of the Laws of 1965, including Wis. Stat. § 87.30, is "to grant necessary powers and to organize a comprehensive program under *a single state agency* for the enhancement of the quality management and protection of all waters of the state, ground and surface, private and public."[5] The single state agency is the DNR.

¶ 125. The state floodplain zoning laws exist to protect human life and health and to minimize property damage and economic losses.[6] Floodplain zoning focuses on avoiding obstructions to flood flows and exposure of property to flood damage.[7] Floodplain zoning laws apply where there is a 1% chance of a flood's occurrence in any given year, which translates into a

---

[4] Federal statutes discourage floodplain development that will be subject to flood damage. The federal government provides affordable flood insurance to property owners who meet federal standards.

[5] Section 1, ch. 614, Laws of 1965 (emphasis added).

[6] *See* lead op. at ¶ 43; Wis. Admin. Code § NR 116.01(1) (June, 1996).

[7] *See* Department of Natural Resources, Bureau of Water Regulation & Zoning, *Floodplain & Shoreland Management: A Guide for Local Zoning Officials* 1.1 (Publication No. WZ–210–Rev88, 1988).

26% chance that a flood will occur during the life of a 30-year mortgage.[8]

¶ 126. The significance of the state interest in floodplain zoning is immediately apparent in the present case. The State is the plaintiff in this case, a case that involves a county variance granted to a private property owner. The State has been involved in this case since its earliest stages before the County Board of Adjustment.

¶ 127. Section 87.30 requires counties, cities, and villages to enact floodplain zoning ordinances that conform to the minimum standards adopted by the DNR. If the local ordinance does not meet the minimum DNR standards, the DNR has authority to adopt an ordinance for the local government.[9] The legislature has directed the DNR to promulgate rules defining "non-

---

[8]*See* Note to Wis. Admin. Code § NR 116.03(41) (June, 1996).

[9]*See* Comments, § 1, ch. 437, Laws of 1977, *reprinted in* Wis. Stats. Ann. § 87.30, at 573 (West 2000). *See also* Wis. Admin. Code § NR 116.05 (June, 1996); Department of Natural Resources, Bureau of Water Regulation & Zoning, *Floodplain & Shoreland Management: A Guide for Local Zoning Officials* 3.34 (Publication No. WZ–210–Rev88, 1988); Paul G. Kent, *Wisconsin Water Law: A Guide to Water Rights and Regulations* 42 (1994).

Implementing floodplain zoning laws is necessary to ensure that the municipalities and their residents will be eligible for flood insurance through a federal insurance program and federal disaster relief. *See* Paul G. Kent, *Wisconsin Water Law: A Guide to Water Rights and Regulations* 42 (1994).

A DNR publication cautions municipalities that failure to meet DNR standards will cause development in that area to be nonconforming, which will result in prohibitions on future expansion or modification. *See* Department of Natural Resources, Bureau of Water Regulation & Zoning, *Floodplain &*

conforming building" and further prohibits the enactment of ordinances that allow certain improvements to nonconforming buildings.[10] That the legislature intends the DNR to regulate residential basements in floodplains and regulate improvements of nonconforming buildings is evident in the statute that places restrictions on the DNR's powers to issue rules regarding floodproofed basements.[11] No statute, however, prevents the DNR from prohibiting variances for habitable residences with floors below the regional flood elevation.

¶ 128.  Given the broad grant of power to the DNR in Wis. Stat. § 87.30 and the stated purposes and policy of the adoption of § 87.30, the DNR has the authority to prohibit variances that it determines are against the public interest. The DNR rule in issue in this case, Wis. Admin. Code § NR 116.13(2) (June, 1996), provides that no variance may be granted to allow any floor below the regional flood elevation.[12] This may be a wise rule; it may be an unwise one. But the wisdom of the rule is not for this court to decide. The power of the DNR to issue the rule is the issue.

---

*Shoreland Management: A Guide for Local Zoning Officials* 3.34 (Publication No. WZ–210–Rev88, 1988).

[10] *See* Wis. Stat. § 87.30(1d)(a)1. and (1d)(c).

[11] Wisconsin Stat. § 87.30(1g)(a) limits the DNR's power to promulgate any rule that contains provisions for floodproofed residential basements that are more restrictive than those imposed by the Federal Emergency Management Agency. This provision is not applicable to the present case because the Warnings' basement is not "floodproofed" as that word is used in the statutes.

[12] *See* Wis. Stat. § 87.30(1d)(a)1. and (1d)(c); 44 C.F.R. § 60.3(c)(2).

¶ 129.  I disagree with the majority that the general power of a County Board of Adjustment under Wis. Stat. § 59.694(7) to grant zoning variances trumps DNR's floodplain rules promulgated under § 87.30. The court's decision today granting a County Board of Adjustment plenary power to allow variances in floodplains regardless of DNR rules is a judicial grant of power to the counties that is inconsistent with Wis. Stat. § 87.30 and is contrary to the long-standing interpretation of § 87.30.[13]

¶ 130.  The law is clear: A county may not enact a floodplain zoning ordinance that allows improvement of a nonconforming structure contrary to state statute, DNR rules, or federal law.[14] By concluding otherwise, a majority of this court has transformed the County Board of Adjustment's statutory power to grant variances from a safety valve or escape hatch into a gaping hole in floodplain regulation that state authorities cannot plug.

¶ 131.  I recognize that a town employee erred in granting the initial permit allowing this house to be built with this basement. I part company with the conclusion in Justice Crooks' concurrence that this error estopped the County Board of Adjustment from denying the Warnings the variance necessary to build their

---

[13] Chapter NR 116 of the DNR rules, including Wis. Admin. Code § NR 116.13(2), at issue in the present case, has been in effect since 1986.

[14] *See* Wis. Admin. Code § NR 116.13(2) (June, 1996); Wis. Stat. § 87.30(1d)(c); 44 C.F.R. § 60.3(c)(2). A local community may adopt stricter standards than the DNR promulgates. *See* Department of Natural Resources, Bureau of Water Regulation & Zoning, *Floodplain & Shoreland Management: A Guide for Local Zoning Officials* 3.50 (Publication No. WZ–210–Rev88, 1988).

683

sun porch. Justice Crooks' concurrence's estoppel theory runs afoul of long-established case law that estoppel does not arise when a property owner relies on a building permit issued in violation of an ordinance.[15] The Warnings acknowledged as much in their arguments to this court.[16]

II

¶ 132.   Having concluded that Wis. Stat. § 87.30 and Wis. Admin. Code § NR 116.13(2) prohibit the County Board of Adjustment from granting the variance in this case, I now turn to the lead opinion's analysis of the legal standard governing variances authorized by a County Board of Adjustment. In suggesting that we overrule a unanimous decision of this court that three justices apparently no longer agree with, the lead opinion loses sight of what the applicable statutes governing variances do and do not say.

¶ 133.   The lead opinion would overrule *Kenosha County*,[17] concluding that the decision prevents Wisconsin from joining other jurisdictions that distinguish

---

[15] *See Willow Creek v. Town of Selby*, 2000 WI 56, ¶¶ 49, 55–56, 235 Wis. 2d 409, 611 N.W.2d 693 (erroneous acts or representations of municipal officers do not afford a basis to estop a municipality from enforcing zoning ordinances); *Snyder v. Waukesha County Zoning Bd.*, 74 Wis. 2d 468, 476–77, 247 N.W.2d 98 (1976) (no estoppel may arise against a municipality for the unauthorized acts of its officers; a building permit cannot confer the right to violate an ordinance).

[16] *See* Brief and Appendix of the Intervening Defendant-Respondents-Petitioners David and Barbara Warning (dated May 4, 1999) at 31.

[17] *State v. Kenosha County Bd. of Adjustment*, 218 Wis. 2d 396, 577 N.W.2d 813 (1998).

area and use variances, subjecting the former to a lesser standard than the latter. *See* lead op. at ¶ 48.

¶ 134. But this distinction between area and use variances is not visible in the Wisconsin statutes. Indeed, as the lead opinion acknowledges, the Wisconsin statutes provide no basis for distinguishing area and use variances.[18] Instead, under Wisconsin law, all variances are subject to the "unnecessary hardship" standard, set forth in but not defined in the statute. *See* Wis. Stat. § 59.694(7)(c).

¶ 135. I do not join the lead opinion in deviating from the plain language of the statute and adopting a distinction that has been created explicitly or implicitly by several courts.[19] Without more guidance as to the workability of the differences these courts have articulated, I am not convinced that these courts represent such a compelling mainstream that this court should overrule recent precedent to join them.

¶ 136. Without statutory authority, the majority concludes that the law requires that the Warnings receive a variance for their non-conforming basement. This conclusion is wrong for two reasons: (1) Wisconsin law does not allow us to read the "unnecessary hardship" standard differently depending on whether a variance is labeled as an area or use variance; and (2) even if we were to apply a lesser standard for so-called area variances, the Warnings are not necessarily asking for an area (rather than a use) variance. I address each of these points in turn.

---

[18] *See* lead op. at ¶ 34.

[19] One commentator states that "[a] few courts have avowedly applied a less stringent standard to area variances and have articulated the difference between variances which affect area and those that affect use." *See* Kenneth H. Young, 3 *Anderson's Law of Zoning* § 20.52, at 595 (4th ed. 1996).

¶ 137. First, there is no good Wisconsin authority for the proposition that the reference to "unnecessary hardship" in Wis. Stat. § 59.694(7)(c) should be interpreted differently depending on whether the court is considering an area or a use variance. The statutes are silent regarding the differences between area and use variances. The majority turns to the case law, relying on *Snyder v. Waukesha County Zoning Board of Adjustment*, 74 Wis. 2d 468, 475, 247 N.W.2d 98 (1976), as a basis for distinguishing between the area and use variances to determine the appropriate definition of "unnecessary hardship."

¶ 138. But in *Kenosha County*,[20] we clarified that this proposed binary analysis does not flow from *Snyder*. Instead, *Snyder* requires Boards of Adjustment and reviewing courts to derive the appropriate standard for "unnecessary hardship" from the underlying purpose of the zoning regulation.[21] As a result, this court held, by a unanimous vote, that we would interpret "unnecessary hardship" in Wis. Stat. § 59.694(7)(c) as requiring a showing that the property owner could make "no reasonable use" of the property, regardless of whether the property owner characterized the variance as an area or use variance. Thus in *Kenosha County*, when the property owner would have a reasonable use of the property without the variance, the purpose of the shoreland zoning statute took precedence and the variance request for a deck was denied.[22]

¶ 139. The lead opinion concludes that the principles of stare decisis are not sufficient to bind it to the

[20] *State v. Kenosha County Bd. of Adjustment*, 212 Wis. 2d 310, 569 N.W.2d 54 (Ct. App. 1997).

[21] *Snyder*, 74 Wis. 2d at 473.

[22] *Kenosha County*, 218 Wis. 2d at 421.

result that follows in the present case.[23] The lead opinion concludes that the imposition of a "no reasonable use" standard for all variances requiring a statutory showing of "unnecessary hardship" must be overruled because "the rule has proven to be intolerable simply in defying practical workability."[24] I disagree. Many states use the "no reasonable use" standard for variances.[25] The standard of "no reasonable use" is well established in Wisconsin law. Even under the lead opinion's view of Wisconsin case law, the standard has been applied and would presumably continue to be applied for use variances. If the standard is "intolerable simply in defying practical workability," how can the three justices retain it for use variances? I agree with Justice Crooks' concurrence that no compelling reason exists to overrule the *Kenosha County* precedent.[26]

¶ 140.    Second, the lead opinion has not shown that the Warnings requested an area rather than a use variance for their basement. A variance is not necessarily an "area variance" simply because the relevant zoning regulations set forth dimensional limits. The

---

[23] *See* lead op. at ¶¶ 30–49. Two of today's three votes to overrule our unanimous decision in *Kenosha County* come from justices who were not yet on the court when we decided that case.

[24] *See* lead op. at ¶¶ 30–31 (quoting *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 854–55 (1992)).

[25] *See Kenosha County*, 218 Wis. 2d at 414 n.11.

[26] *See* Justice Crooks' concurring op. at ¶¶ 71, 80.

distinction between area and use variance is not clear.[27]

¶ 141. The lead opinion cogently recognizes the problems that arise when a use variance is "disguised" as an area variance.[28] Yet it inexplicably ignores the possibility that the variance at issue in this case is similarly disguised as an area variance. The variance in this case may be an area variance because it allows a deviation from the dimensions prescribed by the floodplain zoning regulations. Or it may be a use variance in that it allows the Warnings to use their property in a way that is incompatible with a floodplain, namely, to improve a home that has a basement deeper than permitted by the ordinance.[29] Or it may be a hybrid.[30]

¶ 142. The difficulty in categorizing area and use variances is precisely the problem that our decision in *Kenosha County* helps address: namely, how to move away from artificial labels and apply a standard for all variances that will appropriately reflect the underlying purpose of the zoning laws at issue.[31] The lead opinion's call for an artificial distinction between use and

---

[27] *See* Kenneth H. Young, 3 *Anderson's Law of Zoning* § 20.06 at 425 (4th ed. 1996) (describing use and area variances and concluding that "[c]lassification is not always clear").

*See also* lead op. at ¶ 40 (discussing *State v. Winnebago County*, 196 Wis. 2d 836, 540 N.W.2d 6 (Ct. App. 1995) (a case of a use variance masquerading as an area variance)).

[28] *See* lead op. at ¶ 41.

[29] *See* Kenneth H. Young, 3 *Anderson's Law of Zoning* § 20.06 at 425 (4th ed. 1996) (noting that a variance to allow extension of a nonconforming use has been treated as a use variance).

[30] *See* Kenneth H. Young, 3 *Anderson's Law of Zoning* § 20.48 at 579 (discussing cases that have treated a variance as both an area and use variance).

[31] *See Kenosha County*, 218 Wis. 2d at 412, n.10.

area variances, unaccompanied by any guidance as to how to apply this distinction in a principled manner, itself defies practical workability.

¶ 143. The guidance that I glean from the lead opinion is that a use variance is subject to a more restrictive standard than an area variance because use variances threaten to change the character of the neighborhood.[32] This analysis follows from the principle set forth in *Snyder*, and confirmed in *Kenosha County*, that what constitutes an unnecessary hardship justifying a variance must be evaluated in light of the purpose of the zoning law.

¶ 144. But even if it correctly reflected Wisconsin law, the lead opinion's analysis begs a key question: what is the purpose of the floodplain zoning law at issue in this case, and to what standard should a variance from a floodplain zoning law be held?[33]

¶ 145. Elsewhere, the lead opinion tells us that the purposes of the floodplain zoning laws are "promoting public health and safety and protecting private property from flood damage."[34]

¶ 146. The lead opinion is thus implicitly concluding that variances from zoning laws that promote health and safety and protect private property from flood damage are subject to a less restrictive standard than zoning laws that preserve the character of a

---

[32] *See* lead op. at ¶ 40 (quoting with approval the court of appeals decision in *Kenosha County*, 212 Wis. 2d 310, 319–20, 569 N.W.2d 54 (Ct. App. 1997)).

[33] *See* lead op. at ¶ 36. Indeed, as Justice Crooks' concurring opinion points out, *Kenosha County* has preserved the principle in *Snyder* that the existence of an "unnecessary hardship" requires consideration of the purpose of the zoning law. *See* Justice Crooks' concurring op. at ¶ 76.

[34] *See* lead op. at ¶ 43.

neighborhood. I cannot agree. Thus, even if the lead opinion mustered four votes to overrule *Kenosha County*, which it did not, and this court were bound by the lead opinion, I could not conclude that future homeowners in the Warnings' position are subject to anything less than the no reasonable use standard. To conclude otherwise is to fail to promote health and safety and protect private property from flood damage.

¶ 147. So where does the law governing variances stand? Three members of this court want to erect a binary standard that reflects an artificial distinction between area and use variances. Four members of the court read *Kenosha County* as permanently doing away with the artificial concepts of area and use variances. *Kenosha County* thus survives another day. To grant a variance, a County Board of Adjustment must conclude that the property owner has no reasonable use of the property, in light of the purpose of the applicable zoning regulations.

¶ 148. Even if I were to assume that the County Board of Adjustment had the authority to grant the variance at issue in this case, which it did not, I would follow the analysis of the court of appeals and conclude that the County Board of Adjustment erroneously granted the Warnings' requested variance. The Warnings did not show that without a variance that will allow them to add a sun porch to their home, they can make no reasonable use of the property.

¶ 149. For the reasons set forth, I dissent.

¶ 150. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.